**STATE of Utah, Appellee,**

v.

**Jayne I. PATIENCE, Appellant.**

**No. 960399–CA.**

Court of Appeals of Utah.

Aug. 14, 1997.

382

Joan C. Watt, Salt Lake City, for Appellant.

Jan Graham and Laura B. Dupaix, Salt Lake City, for Appellee.

Before BILLINGS, JACKSON, and ORME, JJ.

## OPINION

JACKSON, Judge:

Defendant Jayne I. Patience appeals from her conviction and sentence for three third degree felonies based on her plea of guilty to three counts of attempted forgery, in violation of Utah Code Ann. § 76–6–501 (1995 & Supp.1996). We affirm in part and reverse and remand in part.

## BACKGROUND

In March 1995, defendant was charged with three counts of forgery, a second degree felony, in violation of Utah Code Ann. § 76–6–501 (1995). The information charging defendant alleged that defendant had on three separate occasions altered three of her employer's checks with a face amount of $100 or more. At the time the information was filed, forgery was a second degree felony if the altered check had a face amount of $100 or more. *See id.* However, effective May 1, 1995, the statute under which defendant was charged was amended to make all forgeries third degree felonies, regardless of the face amount of the altered check. *See id.* § 76–6–501(3) (Supp.1996).[1]

In October 1995, the parties negotiated a plea agreement under which defendant agreed to plead guilty to three counts of attempted forgery, third degree felonies. At the time of the plea agreement, both parties were apparently unaware of the amendments reducing forgery to a third degree felony, *see id.*, and attempted forgery to a class A misdemeanor, *see id.* § 76–4–102 (1995).

Defendant's sentencing hearing was held in December 1995. At the time of sentencing, the parties, as well as the trial court, were still unaware of the legislative changes making attempted forgery a class A misdemeanor. At the hearing defendant acknowledged, through counsel, that she had a previous class A misdemeanor conviction for forgery or attempted forgery in 1987. Defendant also informed the trial court that she had stipulated to a nondischargeable judgment for $485,000 as restitution to her employer for the forgeries at issue in this case.

At the hearing, the trial court also allowed Virginius Dabney, an attorney who had previously employed defendant as a legal secretary, to speak, although he was not sworn. Mr. Dabney stated that during defendant's employment with him, she had asked him for help because she was unable to make restitution on her 1987 class A misdemeanor forgery conviction and she was afraid the judge would put her in jail. Mr. Dabney stated that he interceded for defendant by telling the judge that defendant was an excellent legal secretary and that her incarceration would have a significant impact on his practice. Defendant was not incarcerated at that time.

---

1. Section 76–6–501 formerly provided:

 (3) Forgery is a felony of the second degree if the writing is or purports to be: . . . .
 (b) a check with a face amount of $100 or more. . . .
 (4) Forgery is a felony of the third degree if the writing is or purports to be a check with a face amount of less than $100; all other forgery is a class A misdemeanor.

Utah Code Ann. § 76–6–501 (1995).

The current version of this section no longer changes the classification of the offense based on the face value of the check, but instead generally provides: "Forgery is a felony of the third degree." Utah Code Ann. § 76–6–501 (Supp.1996) (amendment effective May 1, 1995).

Mr. Dabney further stated that after defendant left his employment, he discovered that defendant had embezzled about $18,000 from him over a period of ten months, beginning about two or three months after Mr. Dabney had spoken on her behalf before the judge in the prior misdemeanor case. Mr. Dabney stated that he obtained a civil judgment against defendant for the amount stolen, although he settled with defendant for a smaller sum. Mr. Dabney concluded by stating that defendant "has worked for three different employers. She has embezzled from all of us."

After hearing Mr. Dabney's statements; the arguments of both parties; and the statements of a representative of defendant's most current employer, whose checks defendant was convicted of forging, the trial court stated that "the behavior of the defendant in this case is egregious," and that:

> The victims have been stacked up back to back. It is unlikely that more than a few days lapsed from victim A to victim B to victim C. And the Court is of the opinion that the theft was continuous, it was ongoing, and but for the fact that the defendant was caught on this case, three more employers would have resulted in three more victims.

The trial court also stated that it was "mind boggling to this Court to believe that anywhere from $600,000 has been taken by this defendant in the last decade, from people who just simply trusted this defendant with the store." The trial court then sentenced defendant to serve three consecutive zero-to-five year terms for three third degree felonies, and ordered defendant to "make restitution in full." Defendant appeals.

## ANALYSIS

On appeal, defendant argues: (1) the trial court erred in sentencing her for three third degree felonies based on three counts of attempted forgery, as she is entitled to the reduced criminal penalty in effect at the time of her sentencing; (2) the trial court erred in imposing consecutive sentences based on the determination that defendant had committed three continuous crimes of embezzlement, which determination was premised in part on statements at the sentencing hearing made by defendant's former employer concerning a prior civil dispute; and (3) the trial court erred in convicting defendant for three counts of attempted forgery rather than one count because the forgeries constituted a series of transactions which were part of one plan and which were motivated by one general intent.

### I. Rescission of Plea Agreement by State

Defendant first argues that her sentence for three third degree felonies based on her conviction for three counts of attempted forgery was illegal, and that she should be resentenced according to the lesser penalty afforded by the amended statute in effect at the time of her sentencing.[2] She asserts that she should have been sentenced pursuant to the amended statute for three class A misdemeanors, rather than three third degree felonies.[3] The State concedes that there was an illegal sentence, but argues that the remedy should not be to resentence defendant according to the lesser penalty afforded by the amended statute, but instead to allow the State to rescind the plea agreement and reinstate the original forgery charges against defendant. The parties could then either negotiate a new plea agreement or proceed to trial on the original charges. Whether defendant was entitled to be resentenced according to the lesser penalty in place at the time of her sentencing, or whether the State is entitled to rescind the plea agreement, are questions of law. "We review questions of law for correctness, according no deference to the trial court's con-

---

2. Although defendant did not raise this issue before the trial court, this court may review defendant's sentence pursuant to Rule 22(e) of the Utah Rules of Criminal Procedure, which allows this court to review the legality of a sentence for the first time on appeal. *See State v. Brooks*, 908 P.2d 856, 860 (Utah 1995).

3. Under Utah Code Ann. § 76–3–203(3) (1995), a person who has been convicted of a third degree felony may be sentenced to imprisonment for "an indeterminate term not to exceed five years." Under Utah Code Ann. § 76–3–204(1) (1995), a person who has been convicted of a class A misdemeanor may be sentenced to imprisonment "for a term not exceeding one year."

clusions." *State v. Yates*, 918 P.2d 136, 138 (Utah.Ct.App.1996).

■ Both this court and the Utah Supreme Court have consistently held that "[d]efendants are entitled to the benefit of the lesser penalty afforded by an amended statute made effective prior to their sentencing." *Id.* at 138 (citing *Belt v. Turner*, 25 Utah 2d 230, 232, 479 P.2d 791, 792–93, *aff'd on reh'g*, 25 Utah 2d 380, 381–82, 483 P.2d 425, 426 (1971)); *see also Smith v. Cook*, 803 P.2d 788, 792 (Utah 1990); *Shelmidine v. Jones*, 550 P.2d 207, 211 (Utah 1976); *State v. Saxton*, 30 Utah 2d 456, 459–60, 519 P.2d 1340, 1342 (1974); *State v. Tapp*, 26 Utah 2d 392, 394–95, 490 P.2d 334, 336 (1971). This rule was originally set out by the Utah Supreme Court in *Belt*. *See* 479 P.2d at 792. In that case, the supreme court explained the rationale underlying the rule, stating:

> "A legislative mitigation of the penalty for a particular crime represents a legislative judgment that the lesser penalty or the different treatment is sufficient to meet the legitimate ends of the criminal law. Nothing is to be gained by imposing the more severe penalty after such a pronouncement; the excess in punishment can, by hypothesis, serve no purpose other than to satisfy a desire for vengeance."

*Id.* at 793 (citation omitted). The supreme court further discussed the policy considerations supporting the rule in *Tapp*, stating:

> The first of these [considerations] is that it is the prerogative of the legislature, expressing the will of the people, to fix the penalties for crimes; and the courts should give effect to the enactment and the effective date thereof as so declared. There are some other fundamental principles engrained in our law which, though not directly controlling on the problem at hand, are generally in harmony with the policy considerations which lead to the conclusion we have reached herein.... [These principles include] the time-honored rules of the criminal law generally favorable to one

accused of crime: that in case of doubt or uncertainty as to the degree of crime, [the accused] is entitled to the lesser, and correlated thereto: that as to an alternative between a severe or a lenient punishment, [the accused] is entitled to the latter.

*Tapp*, 490 P.2d at 336 (footnotes omitted); *see also Yates, Shelmidine*, 550 P.2d at 211 (stating rule that defendants are entitled to benefit of lesser penalty is "in harmony with the general policy of the law according one accused of crime the most favorable aspect of the law which is being applied against him"); 918 P.2d at 139, 140.

Utah courts have refused to recognize exceptions to this rule, even where the defendant's presentence misconduct resulted in the defendant's sentencing being delayed beyond the effective date of the amendments. *See, e.g., Yates*, 918 P.2d at 139–40 (stating supreme court has determined defendant's actions that delay sentencing are irrelevant to trial court's sentence, and that "[d]ilatory as well as diligent defendants are entitled to the benefit of the legislature's amended punishments and lesser sentences"); *see also Saxton*, 519 P.2d at 1341; *Belt*, 479 P.2d at 792–93. Instead, we have held that a defendant's "pre-sentence conduct does not affect application of the rule affording defendants the benefit of a lesser punishment," *Yates*, 918 P.2d at 139, and that to hold otherwise would be inconsistent with the principles underlying the rule. *See id.* at 140.

The State, however, argues that the rule set out in *Belt* and later cases does not apply to the present case because, unlike the prior cases applying the *Belt* rule, the amended statute in this case was in effect before the parties entered into the plea agreement. The State argues that the plea agreement was therefore based on a mutual mistake of material fact and that the appropriate remedy, based on contract law principles, is to vacate the agreement and allow the State to reinstate the original forgery charges against defendant.[4]

---

4. The State also suggests that in seeking resentencing under the amended statute, defendant is attempting to take "unfair advantage" of the parties' mutual mistake to the State's detriment. The State asserts that were defendant to be re-

sentenced as she requests, defendant would "unfairly reap a windfall from the parties' mutual mistake at the State's expense." However, we disagree that defendant is somehow trying to take unfair advantage of the parties' oversight by

Many courts, including the Utah Supreme Court and the United States Supreme Court, have referred to plea agreements as contracts and have applied principles derived from contract law to plea agreements. *See, e.g., Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971); *State v. West*, 765 P.2d 891, 896 (Utah 1988). In *West*, the Utah Supreme Court referred to contract law in determining whether a defendant should be allowed to withdraw his guilty plea. *See* 765 P.2d at 896. In that case, the defendant pleaded guilty to a reduced charge of attempted sexual abuse of a child, a second degree felony. *See id.* at 893. Before the defendant was sentenced, the legislature amended the statute under which the defendant was charged, reducing attempted sexual abuse of a child from a second to a third degree felony. *See id.* The trial court, unaware of the change in law, sentenced the defendant for a second degree felony. *See id.* The defendant subsequently moved to withdraw his plea, asserting that he did not knowingly and voluntarily enter his guilty plea. *See id.* at 895. The defendant argued that he would not have entered into the agreement had he known that the punishment for the original charge had been reduced to a second degree felony, in effect depriving him of the benefit of his bargain. *See id.* at 896.

The Utah Supreme Court stated that "[t]he nature of plea bargains requires the exchange of consideration, allowing the parties involved to reach a mutually desirable agreement. A plea bargain is a contractual relationship in which consideration is passed." *Id.* The court continued by stating: "A plea bargain does not involve a situation where a defendant willingly pleads guilty to a crime, neither asking nor expecting anything in return." *Id.* The court then determined that, in the case at hand, "[i]t would be ... implausible to assume that defendant would have *bargained* to plead guilty expecting nothing in return if the facts are as defendant asserts," and noted that the defendant had "apparently received seriously deficient information from all persons involved in his case." *Id.* The court therefore remanded the case to the trial court to determine "whether [the] defendant's original guilty plea was entered into knowingly and voluntarily." *Id.*[5]

Although in applying contract principles to plea agreements courts refer to both the State and the defendant as being entitled to the benefit of their bargain under the plea agreement, *see, e.g., United States v. Ringling*, 988 F.2d 504, 506 (4th Cir.1993), the majority of cases applying such principles involve circumstances in which the defendant sought to modify or withdraw from a plea agreement. *See, e.g., West*, 765 P.2d at 895–96. The question in this case, however, where defendant has not sought to withdraw her guilty plea but instead requests resentencing under the amended statute in effect at the time of her sentencing, is whether the State has the right to rescind the plea agree-

---

seeking to be sentenced under the amended statute in accordance with clearly established law providing that defendants are *entitled* to the benefit of the lesser penalty in effect at the time of their sentencing. *See generally Shelmidine v. Jones*, 550 P.2d 207, 211 (Utah 1976) (stating general policy of law accords defendant "most favorable aspect of the law" being applied against him or her).

5. In *State v. West*, 765 P.2d 891 (Utah 1988), the defendant also brought a separate habeas corpus proceeding. *See id.* at 893. In that proceeding, the parties stipulated that the "defendant had been improperly sentenced to a second degree felony and was entitled to receive the lesser penalty for committing the third degree felony of attempted sexual abuse of a child." *Id.* The defendant was then resentenced. *See id.* However, the defendant's resentencing occurred "almost two months after defendant's motion to withdraw his guilty plea was denied." *Id.* The defendant appealed "the denial of his motion to withdraw his guilty plea, but not the disposition of his habeas corpus proceeding." *Id.*

Thus, in *West*, the State apparently agreed that it was appropriate to resentence the defendant according to the lesser penalty under the amended statute, but disagreed that the defendant should be entitled to withdraw his plea.

In contrast, defendant here is requesting resentencing according to the lesser penalty provided for in the amended statute, but does not seek to withdraw her plea. Under the circumstances here, the State would apparently allow defendant to withdraw her plea, but disagrees that she should be allowed to be resentenced according to the amended statute in effect at the time of her sentencing.

ment based on its assertion of "mutual mistake."

We first note that, although courts recognize that "[p]rinciples of contract law provide a useful analytic framework" in cases involving plea agreements, they also recognize that there are limits to the contract analogy, and that contract principles "cannot be blindly incorporated into the criminal law in the area of plea bargaining." *United States v. Ocanas*, 628 F.2d 353, 358 (5th Cir.1980); *see also United States v. Olesen*, 920 F.2d 538, 541, 542 (8th Cir.1990) (stating "[p]lea agreements are *like* contracts; however, they are not contracts, and therefore contract doctrines do not always apply to them," and that "[t]his court has ... acknowledged the inherent limits of the contract analogy"). In applying contract law principles to plea agreements, "[c]ourts must keep in mind that the defendant's 'underlying "contract" right is constitutionally based and therefore reflects concerns that differ fundamentally from and run wider than those of commercial contract law.' As a result, the application of contract law principles to plea agreements may require tempering in some instances." *People v. Evans*, 174 Ill.2d 320, 220 Ill.Dec. 332, 335, 673 N.E.2d 244, 247 (1996) (citations omitted).[6] For example, in interpreting plea agreements or determining their validity, courts may in certain circumstances hold the government to a higher standard than the defendant. *See, e.g., Ringling*, 988 F.2d at 506 (" '[B]oth constitutional and supervisory concerns require holding the government to a greater degree of responsibility than the defendant ... for imprecisions or ambiguities in plea agreements.' " (citation omitted)).

Based in part on the constitutional concerns underlying plea agreements, courts will allow a defendant to withdraw a plea when the defendant entered into the plea agreement unknowingly and involuntarily. *See West*, 765 P.2d at 896; *see also Salazar v. Warden, Utah State Prison*, 852 P.2d 988, 992 (Utah 1993) (stating " 'a guilty plea is constitutionally infirm ... when the plea is not knowing and intelligent' " (citation omitted)); *State v. Stilling*, 856 P.2d·666, 670–71 (Utah.Ct.App.1993) (discussing constitutional and procedural requirements of plea-taking proceedings, and stating such proceedings "are intended to insure that a defendant who pleads guilty knowingly and voluntarily waives the protections the constitution guarantees him or her prior to a trial verdict"). However, courts will generally only allow the State to unilaterally rescind a plea agreement by " 'showing that facts analogous to those warranting a mistrial exist,' " or by showing that the defendant has breached the agreement. *State v. Copeland*, 765 P.2d 1266, 1276 (Utah 1988) (citation omitted). Courts have also allowed the state to rescind plea agreements where the defendant seeks to withdraw from a portion of a plea agreement or otherwise unilaterally modify the agreement. *See, e.g., State v. Gibson*, 96 N.M. 742, 743, 634 P.2d 1294, 1295 (App. 1981) (holding that even assuming portion of plea agreement requiring defendant's banishment could not be enforced, defendant was not entitled to modification of plea agreement to eliminate that provision, because defendant could only have entire plea set aside, not just objectionable part).

The State has not shown that any of the circumstances under which states have been allowed to rescind plea agreements exist in the present case. Moreover, even applying traditional contract law principles, the State is not entitled to rescind the plea agreement in this case. Under contract law, a party may not rescind an agreement based on mutual mistake where that party bears the risk

---

**6.** For additional cases in which courts have suggested the limits of the contract analogy, *see Ricketts v. Adamson*, 483 U.S. 1, 16, 107 S.Ct. 2680, 2689, 97 L.Ed.2d 1 (1987) ("Unlike some commercial contracts, plea agreements must be construed in light of the rights and obligations created by the Constitution."); *United States v. Ringling*, 988 F.2d 504, 506 (4th Cir.1993) ("[T]he analysis of the plea agreement must be conducted at a more stringent level than in a commercial contract because the rights involved are generally fundamental and constitutionally based."); *State v. Louis*, 645 So.2d 1144, 1148 (La.1994) ("Contractual principles may be helpful by analogy in deciding disputes involving plea agreements. However, the criminal defendant's constitutional right to fairness may be broader than his or her rights under contract laws. Moreover, commercial contract law can do no more than serve as an analogy or point of departure, since 'plea agreements are constitutional contracts.' " (citations omitted)).

of mistake. *See* 17A Am.Jur.2d *Contracts* § 215 (1991). In this case, we conclude the State bore the risk of the mistake as to the law in effect at the time the parties entered into the plea agreement. The State is generally in the better position to know the correct law, given that the State has control over the charges in the information and final say over whether to accept a defendant's plea, and the State must be deemed to know the law it is enforcing. Indeed, it is the State's law, duly enacted by its legislative branch, that is in issue. The State must be charged with knowledge of its own legislative enactments and, in that sense, cannot be said to have been mistaken about the governing statute in effect when it agreed to the plea arrangement. *Cf. Osborne v. State*, 304 Md. 323, 499 A.2d 170, 178 (1985) ("The State must be held to be aware of the common law and the statutes of Maryland ... and it should have bargained with [the defendant] accordingly. We will not allow the State to rescind this plea agreement merely because it made a bad bargain.").

Placing the burden on the State to be aware of the current provisions of the Utah statute under which defendant was charged is consistent with the constitutional concerns involved in plea agreements, as discussed above. Further, we note that this is not a situation where the law was not clear on its face,[7] or where the State was somehow induced into the mistake about the law.[8] Under these circumstances, we refuse to relieve the State of what it now considers a bad

bargain where the plea agreement was the result of uninduced mistake as to the current provisions of Utah statute.

We conclude that the State may not rescind the plea agreement in this case based on mutual mistake. Instead, we hold that the "law on this question is clear and the instant case does not present an exception to the well-established rule: Defendants are entitled to lesser criminal punishments mandated by statutes that become effective before the court imposes sentence.... After the legislature reduces criminal penalties, courts must impose sentences accordingly," *Yates,* 918 P.2d at 139; *see also State v. Burton,* 11 Ohio App.3d 261, 464 N.E.2d 186, 186 (1983) (holding same). Thus, we remand to the trial court to resentence defendant pursuant to the amended statute, under which attempted forgery is a class A misdemeanor.

## II. Due Process in Sentencing

Defendant also argues her right to due process and a fair sentencing hearing was violated because the trial judge based his decision to impose consecutive sentences on a civil dispute between defendant and a former employer.[9] Specifically, defendant asserts that because "the trial judge relied on a statement by a witness not under oath or subject to cross-examination regarding a civil matter as the basis for concluding that [defendant] had committed an additional crime and sentenced [defendant] based on that civil

---

**7.** For examples of cases in which plea agreements were vacated because of a later interpretation of state statute which the State could not reasonably anticipate, *see Daniels v. Smith,* 478 So.2d 110, 110 (Fla.App. 2 Dist.1985) (stating "[n]either the state nor the defense (nor the trial judge, in approving the plea bargain) can be faulted for not anticipating" state supreme court decision holding that "stacking" of minimum mandatories was improper); *People v. Clark,* 43 Mich.App. 476, 204 N.W.2d 332, 336–37 (1972) (vacating plea agreement and allowing prosecutor to reinstate original charges after state supreme court ruled in "unexpected decision" that statute under which defendant had been convicted did not apply to factual situation involved in defendant's case).

**8.** Courts consistently refuse to allow either party to modify or rescind a plea agreement based on uninduced mistake. *See, e.g., United States v.*

*Harvey,* 791 F.2d 294, 300 (4th Cir.1986) ("Neither side should be able, any more than would private contracting parties, unilaterally to renege or seek modification simply because of uninduced mistake or change of mind."); *see also Osborne v. State,* 304 Md. 323, 499 A.2d 170, 178 (1985) (stating, where State argued that plea agreement should be vacated because State could not anticipate court's lenient sentencing, "[s]uch unilateral surprise is unpersuasive, especially in light of the fact that the State's non-expectation stems from its failure to detect the application of a Maryland statute").

**9.** Utah Code Ann. § 76–3–401(3) (Supp.1996) provides that in determining whether to impose consecutive, rather than concurrent, sentences, "[a] court shall consider the gravity and circumstances of the offenses and the history, character, and rehabilitative needs of the defendant."

matter," her right to due process was violated.

■ Defendant's counsel did not object to the statements of Mr. Dabney at the sentencing hearing, but only pointed out to the trial court that the prior incident was a civil matter.[10] Accordingly, this issue was not preserved for appeal. Defendant, however, asserts that we should consider this issue under the plain error doctrine. *See State v. Dunn,* 850 P.2d 1201, 1208–09 (Utah 1993). To obtain appellate relief under this doctrine, defendant must show that "(i) [a]n error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful." *Id.* at 1208.

■ The trial court has substantial discretion in conducting sentencing hearings and imposing a sentence, *see State v. Sanwick,* 713 P.2d 707, 709 (Utah 1986); *State v. Howell,* 707 P.2d 115, 117 (Utah 1985), and we will in general overturn the trial court's sentencing decisions only if we find an abuse of discretion. *See State v. Houk,* 906 P.2d 907, 909 (Utah.Ct.App.1995). However, the trial court's discretion is not unlimited: "The due process clause in both the United States and Utah Constitutions 'requires that a sentencing judge act on reasonably reliable and relevant information in exercising discretion in fixing a sentence.'" *State v. Johnson,* 856 P.2d 1064, 1071 (Utah 1993) (quoting *Howell,* 707 P.2d at 118). Further, "[f]undamental principles of procedural fairness in sentencing require that a defendant have the right to examine and challenge the accuracy and reliability of the factual information upon which [the defendant's] sentence is based." *State v. Gomez,* 887 P.2d 853, 855 (Utah 1994); *see*

*also Howell,* 707 P.2d at 118 (stating that to effectuate due process requirement that "sentencing judge act on reasonably reliable and relevant information," defendant must receive copy of presentence report). Nevertheless, "so long as basic constitutional safeguards of due process and procedural fairness are afforded, the trial court has broad discretion in considering 'any and all information that reasonably may bear on the proper sentence.'" *State v. Sweat,* 722 P.2d 746, 746 (Utah 1986) (citation omitted); *see also Johnson,* 856 P.2d at 1071 (stating evidence that is inadmissible at trial stage, such as hearsay evidence, "may be admissible for sentencing purposes").

■ In this case, Mr. Dabney's statements at the sentencing hearing were relevant to the character and history of the defendant. *See Howell,* 707 P.2d at 117–18. The statements were reasonably reliable in that they were supported by a civil judgment against defendant and were made by a witness with personal knowledge of the facts related. *Cf. Johnson,* 856 P.2d at 1073 (stating report trial court relied on was inherently unreliable because it consisted of double and triple hearsay and "contained numerous internal inconsistencies and speculative conclusions based on incomplete information and questionable factual assumptions"). Defendant has not argued that she was not given adequate notice of Mr. Dabney's allegations or the substance of his statements at the sentencing hearing,[11] *cf. Sweat,* 722 P.2d at 746–47, or that she did not have the opportunity to refute the adverse evidence and to challenge the accuracy or reliability of the evidence presented.[12] *See State v. Gomez,*

---

**10.** Defendant's counsel stated:

> I would simply remind the Court [Dabney's] entire dispute with [defendant] was resolved as a civil dispute. He sued her. He obtained a judgment against her. He settled with her for an amount less than the judgment, but he did accept it as payment in full, and it was a civil matter, and not a criminal matter.

**11.** The substance of Mr. Dabney's testimony was also contained in the presentence report as well as in a letter that Mr. Dabney provided to the court. Defendant did not object to any portion of the presentence report or to the letter.

**12.** Although defendant argues she was not given the opportunity to cross-examine Mr. Dabney, there is no indication in the record that she was precluded from cross-examining him, but only that defendant's counsel did not actually cross-examine him. Further, although defendant apparently suggests her due process rights were violated because Mr. Dabney was not placed under oath and was not cross-examined, defendant offers no legal authority to support her argument that this is a due process violation.

Utah courts have not previously addressed whether a defendant is entitled to cross-examine testifying witnesses at sentencing hearings; how-

887 P.2d at 855 (holding defendant's due process rights were not violated when defendant had opportunity to challenge information at sentencing hearing and failed to do so); *see also Howell,* 707 P.2d at 118–19 (holding trial court did not err in relying on evidence in presentence report that defendants had sexually abused their children when evidence had "indicia of reliability and was relevant in sentencing" and evidence was uncontroverted). Thus, defendant's due process rights were not violated and the trial court acted within its discretion in allowing Mr. Dabney to speak and in considering the evidence of an additional instance of forgery or embezzlement for sentencing purposes.

### III. Consolidation of Forgery Counts

█ Defendant finally argues that she was entitled to be convicted of one count of attempted forgery instead of three because the three counts were based on forgeries of three checks which occurred as part of an " 'embezzlement over a period of time' " and should therefore be " 'found to constitute one continuous transaction' and . . . one offense." *State v. Crosby,* 927 P.2d 638, 645 (Utah 1996) (citation omitted). Defendant did not object to this alleged error of the court at trial; however, defendant asserts that her conviction for three counts constituted plain error. *See Dunn,* 850 P.2d at 1208–09. Although it is far from clear that the plain

error doctrine applies in these circumstances, we will assume it does for purposes of resolving this issue. Whether defendant was entitled to consolidation of the three separate forgery counts into one is a question of law which we review for correctness. *See State v. Pena,* 869 P.2d 932, 936 (Utah 1994).

In arguing that the three forgeries should be considered one offense, defendant relies on the rule adopted in theft or embezzlement [13] cases that allows consolidation of multiple counts of theft in certain circumstances. Under this rule, where several takings are motivated by one general intention and one plan, " 'even though there is a series of transactions, there is but one offense.' " *State v. Kimbel,* 620 P.2d 515, 518 (Utah 1980) (citation omitted); *see also Crosby,* 927 P.2d at 645. Defendant cites no cases extending this rule to forgery cases. Instead, although defendant recognizes that she was charged with forgery and not theft, defendant nevertheless asserts that the rule should be applied to this case because the State and the trial court referred to her crime as a "continuous, ongoing" embezzlement. However, despite any characterizations by the parties or the trial court of defendant's offense as embezzlement or theft, defendant was in fact charged with forgery.

Utah courts have not explicitly considered whether the theft consolidation rule should be applied to forgery cases; however, other

ever, both the United States Supreme Court and courts from other states have indicated that there is no due process violation where no cross-examination is allowed or where witnesses are not placed under oath, so long as the defendant has the opportunity to refute the evidence presented or challenge its reliability. *See, e.g., Williams v. Oklahoma,* 358 U.S. 576, 584, 79 S.Ct. 421, 426, 3 L.Ed.2d 516 (1959) ("[O]nce the guilt of the accused has been properly established, the sentencing judge, in determining the kind and extent of punishment to be imposed, is not restricted to evidence derived from the examination and cross-examination of witnesses in open court but may, consistently with the Due Process Clause of the Fourteenth Amendment, consider responsible *unsworn* or *'out-of-court'* information relative to the circumstances of the crime and to the convicted person's life and characteristics."); *Williams v. New York,* 337 U.S. 241, 250–51, 69 S.Ct. 1079, 1084–85, 93 L.Ed. 1337 (1949) (holding denial of cross-examination of witnesses in sentencing hearing did not violate due process rights); *State v. DeJesus,* 10 Conn.App. 591, 524

A.2d 1156, 1160 (1987) ("[B]oth the United States Supreme Court and our Supreme Court have recognized that a defendant is *not* entitled, under the due process clause, to cross-examine witnesses in a sentencing hearing. . . . Nor is it a denial of due process for the sentencing court to rely on information supplied by a witness whom the accused is not permitted to cross-examine."); *Ruffin v. State,* 683 So.2d 565, 566 (Fla.App. 3 Dist.1996) ("[F]ederal courts have found that due process requires only that a noncapital criminal defendant be afforded the opportunity to refute information brought against him at sentencing; it does not require that the defendant be given the opportunity to call and cross-examine witnesses to rebut the information.").

13. Under Utah's present consolidated theft statute, Utah Code Ann. § 76–6–403 (1995), the general offense of "theft" includes "embezzlement" as well as other offenses that were considered separate offenses under prior law. *See State v. Casias,* 772 P.2d 975, 977 n. 2 (Utah.Ct.App. 1989).

courts considering this issue have refused to extend the rule to forgery. *See, e.g., People v. Neder,* 16 Cal.App.3d 846, 94 Cal.Rptr. 364, 366–67 (1971); *State v. Taylor,* 27 Ariz. App. 140, 551 P.2d 589, 590 (1976). These courts have affirmed the general rule applying to forgery cases that "[a]s to several acts of forgery, each generally constitutes a separate crime, even though they are committed in the course of a continuous transaction." 36 Am.Jur.2d *Forgery* § 43 (1968); *see also Neder,* 94 Cal.Rptr. at 366 ("It has been held that the forgery of several documents at the same time and in the course of one transaction constitutes a separate offense for each instrument.").

In *Neder,* the California Court of Appeals explained the rationale for refusing to apply the theft consolidation rule to forgery cases. *See* 94 Cal.Rptr. at 367. In that case, the defendant was charged with three counts of forgery and argued that, because "the three acts of forgery were part of a single plan," they constituted a single offense under the theft consolidation rule. *Id.* at 366. The court disagreed, holding that this rule should not be applied to forgery cases. The court explained that the "doctrine [allowing consolidation of theft counts] was developed for the crime of theft to allow, where there is a common plan, the accumulation of receipts from [small] takings, so that the taker may be prosecuted for grand theft as opposed to several petty thefts." *Id.* at 367. The court continued by stating that "[t]he essential act in all types of theft is taking." *Id.* However,

> [t]he real essence of the crime of forgery ... is not concerned with the end, i.e.,

what is obtained or taken by the forgery; it has to do with the means, i.e., the act of signing the name of another with intent to defraud and without authority, or of falsely making a document, or of uttering the document with intent to defraud. Theft pursuant to a plan can be viewed as a large total taking accomplished by smaller takings. It is difficult to apply an analogous concept to forgery. The designation of a series of forgeries as one forgery would be a confusing fiction.

*Id.*

■ This rationale is consistent with Utah's revised forgery statute, which no longer provides different penalties for forgeries based on the dollar amount of the forged check, but instead provides generally that "[f]orgery is a felony of the third degree." Utah Code Ann. § 76–6–501(3) (Supp.1996). Thus, we conclude that the theft consolidation rule does not apply to forgery cases, and, therefore, the trial court did not err in failing to consolidate the three counts of attempted forgery into one count.[14]

## CONCLUSION

The trial court did not abuse its discretion in considering the statements of Mr. Dabney at the sentencing hearing, nor did the trial court err in failing to consolidate defendant's three counts of attempted forgery into one count. However, the trial court did err in sentencing defendant for three third degree felonies based on her plea of guilty to three counts of attempted forgery because defendant was entitled to be sentenced according to the lesser penalty afforded by the amend-

---

14. Defendant also cites Utah Code Ann. § 76–1–402 to support her argument that the court should have consolidated the three counts of attempted forgery. This section provides, in part, that "when the same act of a defendant under a single criminal episode shall establish offenses which may be punished in different ways under different provisions of this code, the act shall be punishable under only one such provision." Utah Code Ann. § 76–1–402(1) (1995). "Single criminal episode" is defined as "all conduct which is closely related in time and is incident to an attempt or an accomplishment of a single criminal objective." *Id.* § 76–1–401. However, as discussed above, the general rule is that the forgery of several documents even in the

course of one transaction constitutes a separate offense for each instrument because the essence of the crime of forgery is not the end, i.e., what is obtained by the forgery, but the means, e.g., by signing the name of another with intent to defraud. Therefore, we conclude defendant is not entitled to consolidation of the three counts of forgery based on section 76–1–402.

Defendant also claims her trial counsel's failure to request consolidation of the three forgery counts constitutes ineffective assistance of counsel. However, because we conclude defendant was not entitled to consolidation of the counts, we reject this claim. *See Brooks,* 908 P.2d at 862.

ed forgery statute in effect at the time of her sentencing. Accordingly, we remand to the trial court for resentencing.

BILLINGS and ORME, JJ., concur.