# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State ex rel. State of West Virginia,**
**Plaintiff Below, Petitioner**

**v.      No. 18-0672** (Wetzel County, 11-F-15)

**The Hon. David J. Sims, Judge of the First**
**Judicial Circuit, sitting by special assignment,**
**and John Michael Howell,**
**Defendant Below, Respondents**

**FILED**
**May 3, 2019**
**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

In 2016, John Michael Howell[1] pled guilty to kidnapping with a potential sentence of life imprisonment with the possibility of parole in fifteen years. Mr. Howell challenged the validity of the plea agreement on appeal because the applicable statute mandated eligibility for parole in ten years. We agreed and vacated Mr. Howell's plea agreement and conviction and ordered that the parties be returned to their respective positions prior to the plea bargain. A few days later, the State offered Mr. Howell's lawyer the original plea agreement modified for eligibility for parole in ten years. Two days later—two weeks prior to the offer being communicated to Mr. Howell—the State revoked its offer. At the sentencing hearing, the circuit court determined that the State was not permitted to revoke its offer and ordered specific performance of the new plea agreement. The State[2] now urges us to grant a Writ of Prohibition as to that ruling.

This Court has considered the parties' briefs, the appendix submitted, and the parties' oral arguments. Upon consideration of the standard of review, we find that the circuit court's dispositional order is clearly erroneous as a matter of law. Accordingly, we prohibit enforcement of the circuit court's dispositional order and remand this case with instruction to return the parties to their post-indictment, pre-plea agreement positions. Insofar as this case does not present a new or significant issue of law, and for the reasons set forth herein, we find that this case satisfies the "limited circumstances" requirements of

---

[1] Mr. Howell is represented by Keith White, Esq.

[2] Rhonda L. Wade, Esq., Marshall County Prosecuting Attorney, Eric M. Gordon, Esq., Assistant Prosecuting Attorney, and Herman D. Lantz, Esq., Assistant Prosecuting Attorney, represent the State of West Virginia.

Rule 21(d) of the West Virginia Rules of Appellate Procedure and is proper for disposition as a memorandum decision.

## I.    Facts and Procedural History

In January of 2011, Mr. Howell was indicted on four criminal counts: kidnapping, attempted sexual assault in the second degree, sexual assault in the first degree, and malicious assault. During his trial, the parties informed the circuit court that Mr. Howell agreed to plead guilty to the kidnapping charge, which carries a possible life sentence. The written plea agreement expressly provided that he would be eligible for parole after serving fifteen years in prison:

> It is understood herein that for the Felony offense of **"Kidnapping"** the defendant will be sentenced to **life with mercy**. The defendant will be eligible for parole after serving a **minimum of fifteen (15) years with credit for time served**. **The defendant understands that he may never be paroled, that matter will be left up to the Parole Board**.[3]

In exchange for this guilty plea, the State agreed to dismiss the remaining counts of the indictment. During the plea and sentencing hearing, there were repeated references to Mr. Howell serving fifteen years of incarceration before becoming eligible for parole consideration. Following a plea colloquy, the circuit court determined that Mr. Howell's guilty plea to the crime of kidnapping was knowing, intelligent, and voluntary. The court sentenced Mr. Howell to life in prison with a recommendation of mercy, once again specifying that Mr. Howell would be "eligible for parole after serving a minimum of 15 years with credit for time served[.]"

Mr. Howell's lawyer later objected to the fifteen-year minimum for parole. In a letter to the circuit court, he argued that the fifteen-year parole eligibility period was contrary to law and that all parties were unaware of this at the time of the plea agreement. Specifically, the kidnapping statute provides:

> (b) The following exceptions shall apply to the penalty.
>
> . . .
>
> (2) If the person pleads guilty, the court may, in its discretion, provide that the person is eligible for parole in accordance with the provisions of article twelve, chapter sixty-two of this code and, if the court so provides, the person is

---

[3] Emphasis in original.

eligible for parole in accordance with the provisions of said article in the same manner and with like effect as if the person had been found guilty by the verdict of a jury and the jury had recommended mercy[.][4]

The referenced parole statute addresses eligibility for parole:

An inmate sentenced for life may not be paroled until he or she has served *ten years*, and an inmate sentenced for life who has been previously twice convicted of a felony may not be paroled until he or she has served fifteen years: Provided, That an inmate convicted of first degree murder for an offense committed on or after June 10, 1994, is not eligible for parole until he or she has served fifteen years.[5]

It is undisputed that Mr. Howell has no prior felony conviction. So, under these statutes, he would be eligible for parole consideration in ten years, not fifteen as agreed upon in his plea agreement.

The circuit court held a hearing on May 6, 2016, to consider this issue and specifically addressed the mistake about the applicable parole eligibility period:

I will say this: At the time the plea was entered, I had in my mind that the fifteen-year eligibility date was proper. Basically, what I had in mind, really, was the first degree murder cases. . . . But what I had in my mind—and I'm giving you the mental processes—is that with a recommendation of mercy, that means a person would be eligible for parole in fifteen years. That's what I operated on.

Mr. Howell moved that the sentencing order be changed to reflect that he would be parole-eligible after ten years of incarceration. The State objected to this modification, arguing that the requirement of serving at least fifteen years in prison was "the essence of the plea agreement[,]" and that the State would not have entered into the plea bargain without this provision. Because the fifteen-year provision was specified in the plea agreement, the circuit court denied Mr. Howell's motion to reduce the parole eligibility

---

[4] W. Va. Code § 61-2-14a(b) (2017). Both the kidnapping and parole statutes have been amended since Mr. Howell's alleged crimes. The changes to the relevant language, however, are stylistic and do not affect the outcome of this appeal, so this decision quotes the current language.

[5] W. Va. Code § 62-12-13(c) (2017) (emphasis added).

3

period to ten years and a sentencing order was entered on May 12, 2016. Mr. Howell appealed that order.

In October 2017, we affirmed the circuit court's order.[6] But in February 2018, we granted Mr. Howell's request for rehearing, ultimately reversing our prior decision on the matter and vacating the original plea agreement and conviction.[7] We remanded the case to the circuit court with instruction to return the parties to their respective positions post-indictment but prior to entry of the plea agreement.

Shortly after the decision of this Court, an assistant prosecutor called Mr. Howell's lawyer to discuss a possible resolution of the case. During the April 25, 2018 conversation, the assistant prosecutor told Mr. Howell's lawyer that the State would be willing to offer the original plea agreement with the modification that Mr. Howell would be eligible for parole in ten years, but noted that he hadn't had a chance to talk it over with the victim. The State describes this conversation as its offer to enter into a plea agreement, while Mr. Howell contends that it was instead the State's acceptance of his offer to plead by virtue of his prior arguments to this Court in the underlying appeals.

After speaking with the victim, the assistant prosecutor contacted Mr. Howell's lawyer two days later and revoked the offer. Notably, during a May 10, 2018 pretrial hearing, there was no discussion of the April 25, 2018 plea communication. Instead, the State and Mr. Howell's lawyer discussed plea proposals different than that proposed on April 25. By Mr. Howell's own admission, the April 25 plea offer was not communicated to him until after the May 10, 2018 hearing—two weeks after it had been withdrawn.

On June 28, 2018, Mr. Howell's lawyer sent a text message to Assistant Prosecutors Eric M. Gordon and Herman Lantz, requesting a written plea offer. The assistant prosecutors informed Mr. Howell's lawyer that there was no plea offer on the table.

Mr. Howell then filed his Motion to Enforce State of West Virginia's Agreement to Enter Corrected Sentencing Order/Correct Sentence. In this motion, Mr. Howell argued that the April 25, 2018 communication from the assistant prosecutor was an acceptance of his prior offer to plead—an offer he contends was made known to the State by implication through his brief to this Court in the previous appeal, in which he sought a correction of his sentence from a fifteen-year minimum eligibility for parole to a ten-year minimum.

At a July 16, 2018 hearing, the circuit court determined that an enforceable plea agreement had been reached and directed the parties to return that afternoon to accept the plea. The State objected to this order and requested a delay to allow the filing of this Petition for a Writ of Prohibition. The circuit court denied this request and took the plea

---

[6] *State v. Howell*, 2017 WL 4772861 (October 23, 2017) (memorandum decision).

[7] *State v. Howell*, 2018 WL 7075301 (April 13, 2018) (memorandum decision).

4

on the same day over the State's objection and without the State's signature on the plea agreement.

## II.    Standard of Review

In support of its petition for a writ of prohibition, the State argues that the circuit court abused its discretion in ruling that an enforceable plea agreement existed and in further ordering specific performance of the agreement. Our law is well established that we consider five factors in determining whether to grant a writ in this context:

> [i]n determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceed its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.[8]

With this standard in mind, we consider the arguments of the parties.

## III.    Discussion

We begin our analysis with the constitutional concerns raised by the circuit court and argued on appeal by Mr. Howell, which stem from this Court's order to return all parties to their post-indictment, pre-plea agreement positions. At the outset, we note that there is no absolute right under either the West Virginia or the United States Constitution

---

[8] Syl. Pt. 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996).

to a plea agreement.[9]  We have previously noted that a defendant has "no constitutional right to have his case disposed of by way of a plea bargain[.]"[10]  This is true regardless of whether a defendant has exercised his right to appeal in the underlying matter.  In this case, we are presented with the following plea colloquy:

> The Court:    So [Mr. Howell] is put in a – very disadvantageous position because he exercised his right to challenge a void sentence.    That really is the practical consideration of all of this.
>
> Now, I realize what the majority opinion held, and it did put everybody back into a pre-indictment, pre-plea agreement status, but the reality is that it places [Mr. Howell] in a position that he is, to his jeopardy, going to trial on all the counts in the indictment, and if convicted, the parole issue probably is a nullity for all intents and purposes.
>
> Therein lies the problem here, and that is now – the added ingredient to that is you have this offer that was made by Ms. Poling.  It was made, and what happened within the prosecutor's office I have no idea, whether or not – why she made it.  I don't know, but she did.  Apparently there's no dispute as to that.
>
> You then place the Defendant again in a position of knowing that the offer's out there.  Here we are thinking that now the disposition of the offer originally made has now been accepted so you have a binding plea agreement, and now the State comes and then pulls the rug from under him.  Therein lies a serious, serious constitutional problem.  It truly does.
>
> The fact that [Mr. Howell] is being penalized for exercising his right to challenge a void sentence is also a serious Constitutional problem.

It appears that the circuit court considered this Court's order to return all parties to their post-indictment, pre-plea agreement position as presenting a "serious Constitutional problem" in and of itself.  This conclusion was erroneous for two reasons.  First, the ruling

---

[9] Syl. Pt. 2, *Brewer v. Starcher*, 195 W. Va. 185, 192 S.E.2d 185 (1995).

[10] *Myers v. Frazier*, 173 W. Va. 658, 664 n.5, 319 S.E.2d 782, 788 n.5 (1984)).

is inconsistent with and violates both the law of the case doctrine and the mandate rule. With respect to the law of the case doctrine, we have held as follows:

> The law of the case doctrine generally prohibits reconsideration of issues which have been decided in a prior appeal in the same case, provided that there has been no material changes in the facts since the prior appeal, such issues may not be relitigated in the trial court or re-examined in a second appeal.[11]

The mandate rule is an aspect of the law of the case doctrine, which this Court has explained as follows:

> A circuit court has no power, in a cause decided by the Appellate Court, to re-hear it as to any matter so decided, and, though it must interpret the decree or mandate of the Appellate Court, in entering orders and decrees to carry it into effect, any decree it may enter that is inconsistent with the mandate is erroneous and will be reversed.[12]

Second, in *Alabama v. Smith*, the Supreme Court grappled with the possibility of a criminal defendant receiving a harsher sentence post-appeal than the sentence previously imposed by virtue of the vacated plea agreement. The Supreme Court ultimately held that "there is no basis for a presumption of vindictiveness where a second sentence imposed after a trial is heavier than a first sentence imposed after a guilty plea."[13]

So, in order for there to be a valid plea agreement in this case, there must have been a new plea agreement reached. In the present case, a review of the evidence at the July 16, 2018 hearing reveals that the State made a plea offer on April 25, 2018 to Mr. Howell's lawyer. However, the State revoked the offer on April 27, 2018—two weeks prior to the offer being communicated to Mr. Howell on May 10, 2018. This much is undisputed. Believing that Mr. Howell's constitutional rights were compromised because he had exercised his right to appeal, the circuit court ultimately determined that the State had no authority to revoke the plea offer under those circumstances.

---

[11] *State ex rel. Frazer & Oxley, L.C. v. Cummings*, 214 W. Va. 802, 808, 591 S.E.2d 728, 734 (2003) (internal quotation marks and citation omitted).

[12] Syl. Pt. 1, *Johnson v. Gould*, 62 W. Va. 599, 59 S.E. 611 (1907).

[13] 490 U.S. 794 (1989), overruling *Simpson v. Rice*, 395 U.S. 711 (1969).

As we stated in *State ex rel. Brewer v. Starcher*, "a plea agreement is subject to principles of contract law, insofar as its application insures a defendant receives that to which he is reasonably entitled."[14]  Essential to any contract is the requirement that there is both an offer and an acceptance.  Further, "[b]efore acceptance, a proposal is 'but an offer to contract, and the parties making the offer might undoubtedly withdraw it any time before acceptance.'"[15]

Here, it is undisputed that the initial plea communications at issue occurred on April 25, 2017 and that the State revoked its offer on April 27, 2017.  It is further undisputed that the plea offer was not conveyed to Mr. Howell until May 10, 2018—two weeks after the State revoked the offer.  So, Mr. Howell could not have accepted the offer prior to its revocation.  Though this Court has written extensively on the standards for effectiveness of plea agreements,[16] we need not consider whether specific performance of the agreement was proper in this instance as we find that no valid agreement existed to enforce.

## IV.    Conclusion

For the foregoing reasons, we grant the State's petition for a Writ of Prohibition.

Writ Granted.

**ISSUED**:     May 3, 2019

**CONCURRED IN BY:**
Chief Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison

**CONCURRING, IN PART, AND DISSENTING, IN PART:**
Justice Margaret L. Workman

WORKMAN, J., concurring, in part, and dissenting, in part:

---

[14] *Brewer*, 195 W. Va. at 192, 465 S.E.2d at 192.

[15] *Weaver v. Burr*, 31 W. Va. 736, 747, 8 S.E. 743, 747 (1888) (overturned on other grounds).

[16] *See State v. Wayne*, 162 W. Va. 41, 245 S.E.2d 838 (1978); *State ex rel. Gray v. McClure*, 161 W. Va. 488, 242 S.E.2d 704 (1978); and *Brooks v. Narick*, 161 W. Va. 415, 243 S.E.2d 841 (1978).

8

I concur with the majority's conclusion that the mandate issued by a majority of the Court in *State v. Howell,* No. 16-0541, 2018 WL 7075301 (W. Va. Apr. 13, 2018) (memorandum decision) ("*Howell I*"), returned the parties to their original negotiating positions; and that subsequently, no enforceable plea agreement was reached due to absence of a valid offer and acceptance. However, I write separately to reiterate and underscore how wrong the *Howell I* majority opinion was in completely dismantling the original plea agreement; and how that opinion has indeed resulted in the "colossal absurdity and [] waste of judicial resources" anticipated in my dissent. *See Id.* at *7 (Workman, J., dissenting).

The circuit court also seemed to recognize how grossly unfair the majority *Howell I* decision was and may have attempted to mitigate that mistake by effecting a *de facto* correction of sentence. However, this Court has held that

> [u]pon remand of a case for further proceedings after a decision by this Court, the circuit court must proceed in accordance with the mandate and the law of the case as established on appeal. The trial court must implement *both the letter and the spirit of the mandate*, taking into account the appellate court's opinion and the circumstances it embraces.

Syl. Pt. 3, *State ex rel. Frazier & Oxley, L.C. v. Cummings*, 214 W. Va. 802, 591 S.E.2d 728 (2003) (emphasis added).

That said, I wish to reiterate the fallacy of the *Howell I* majority's insistence that only complete rescission of the plea agreement would remedy the mistake that was made not by the defendant, but by the three lawyers in the room (the Court, the prosecutor, and the defense attorney) which gave rise to the appeal and necessitated this subsequent appeal. As has been made clear in the litany of litigation which this singular mistake of law has wrought, the State, defense attorney, and circuit court (admittedly) incorrectly believed that petitioner's plea to a life sentence of kidnapping rendered him parole eligible after fifteen years. However, West Virginia Code § 62-12-13(c) (2017) provides that, unless twice convicted of a felony or pleading to first degree murder, an inmate sentenced for life is first eligible for parole after *ten* years.

The defendant subsequently learned of the mistake of law that the lawyers and judge made, and sought to have his sentence reformed to reflect the statute accurately. To discharge the State from performing in compliance with the legally mandated parole eligibility statute is inequitable, unnecessary, and puts petitioner at risk of having to now defend himself against a years-old crime since the State inexplicably refused to enter a valid plea agreement to the substantive crime upon which it previously agreed. It is well-established that "[a]s a matter of criminal jurisprudence, a plea agreement is subject to principles of contract law insofar as its application insures a defendant receives that to

9

which he is reasonably entitled." *State ex rel. Brewer v. Starcher*, 195 W. Va. 185, 192, 465 S.E.2d 185, 192 (1995). Moreover, "[w]hen a defendant enters into a valid plea agreement with the State that is accepted by the trial court, an enforceable 'right' inures to both the State and the defendant not to have the terms of the plea agreement breached by either party." Syl. Pt. 4, *State v. Myers*, 204 W. Va. 449, 453, 513 S.E.2d 676, 680 (1998). Mr. Howell did not breach the plea agreement in any respect; therefore, he is entitled to the benefit of the agreement.

The appropriate course for the *Howell I* Court would have been to follow the line of cases which evaluate such scenarios using the contract principles of frustration of purpose and/or mutual mistake of law. Had the majority employed that analysis, it would have plainly determined that a simple downward correction of the parole eligibility aspect of the plea agreement consistent with the statute would have sufficed, alleviating the interminably-prolonged resolution of this matter.

Utilizing these contractual principles, the Kansas Supreme Court has stated that "when a defendant successfully challenges an illegally excessive sentence imposed as the result of a plea bargain, it is the defendant's choice, not the State's, whether to obviate the plea agreement or not." *State v. Boley*, 113 P.3d 248, 257 (Kan. 2005). In reviewing the use of the contractual "frustration of purpose doctrine," the *Boley* Court explained that "[t]he first step in applying the doctrine is to determine whether the allegedly frustrated purpose was 'so completely the basis of the contract that . . . without it the transaction would make little sense.'" *Id.* at 253-54 (quoting Restatement (Second) of Contracts § 265, comment a).

In concluding that the illegal sentence did not frustrate the purpose of the agreement, the *Boley* Court stated:

> [T]he State's purposes were achieved. Through the plea agreement, the State avoided a trial and the attendant risk of a not guilty verdict, i.e., the State obtained a conviction of a severity level 1 drug felony without having to prove the defendant guilty beyond a reasonable doubt before a jury. Additionally, the defendant served time in prison, albeit not as much time as the State expected.

*Id.* at 254. Refusing wholesale rescission of the plea agreement, the *Boley* Court found that even though correction of the illegality resulted in a lesser sentence, it was not tantamount to the *substantial frustration* required for rescission of the agreement altogether:

> The Restatement defines the second element of the doctrine by stating: "[T]he frustration must be substantial. It is not enough that the transaction has become less profitable for the affected

10

> party or even that [it] will sustain a loss. The frustration must be so severe that it is not fairly to be regarded as within the risks ... assumed under the contract."

> In this regard . . . Boley's attack on his sentence will result in a resentencing, although to a sentence which is shorter than that which the State agreed to recommend. Thus . . . "the State has not lost its entire bargained-for value."

*Id.* at 254 (citations omitted).

The Utah Court of Appeals approached a similar situation utilizing the mutual mistake of law doctrine, but reaching the same result as the *Boley* court. In *State v. Patience*, the defendant was sentenced for attempted forgery as a felony offense, when it had been changed to a misdemeanor by law. 944 P.2d 381, 384 (Utah Ct. App. 1997). While the State conceded the sentence was illegal, it demanded that the remedy was to rescind the plea agreement, reinstate the charges, and allow either a trial or new plea agreement. *Id.* at 384. The *Patience* court found that the mutual mistake of law doctrine dictated the proper remedy, explaining "[u]nder contract law, a party may not rescind an agreement based on mutual mistake *where that party bears the risk of mistake.*" *Id.* at 387 (emphasis added). The court then refused to rescind the plea agreement in its entirety, finding that

> [t]he State is generally in the better position to know the correct law, given that the State has control over the charges in the information and final say over whether to accept a defendant's plea, and the State must be deemed to know the law it is enforcing. Indeed, it is the State's law, duly enacted by its legislative branch, that is in issue. *The State must be charged with knowledge of its own legislative enactments and, in that sense, cannot be said to have been mistaken about the governing statute in effect when it agreed to the plea arrangement.*

*Id.* at 387–88 (emphasis added). The court highlighted that "this is not a situation where the law was not clear on its face, or where the State was somehow induced into the mistake about the law[.]" *Id.* at 388. Accordingly, it remanded simply for resentencing on the existing plea agreement. *See also Osborne v. State*, 499 A.2d 170, 178 (Md. 1985), *abrogated on other grounds by State v. Hawkins*, 604 A.2d 489 (Md. 1992) ("The State must be held to be aware of the common law and the statutes of Maryland. . . . We will not allow the State to rescind this plea agreement merely because it made a bad bargain.").

11

Further, in *Coy v. Fields*, 27 P.3d 799, 802 (Az. Ct. App. 2001), the Arizona Court of Appeals similarly approached the need for downward correction of an illegal sentence by utilizing the mutual mistake of law doctrine. Finding that where the mistake of law rests with the prosecutor, rescission of the entirety of the plea agreement is neither necessary, nor appropriate: "We, too, hold the state accountable for knowing Arizona law when it negotiates, drafts, and enters into plea agreements. . . .[T]he state bears the risk when, as here, a sentencing or probation provision in one of its plea agreements proves to be illegal and unenforceable." *Id*. at 803. The *Coy* court likewise remanded for imposition of a legal sentence.

In addition to ignoring the foregoing analysis, the *Howell I* majority fully failed to appreciate the distinction between illegal sentences which are excessively *lenient* (resulting in the need for an upward correction) rather than excessively *harsh* (resulting in the need for a downward correction) and the effect that distinction has on their dispositions. As noted in my earlier dissent, the *Howell I* disposition may certainly have been warranted "[i]f the correction represented an increase in the defendant's exposure to incarceration[.]" *Howell I*, at *5 (Workman, J., dissenting). Noting that a vast majority of the cases in this arena do in fact deal with illegally *lenient* sentences, the Arizona Court of Appeals contrasted those cases with the ones such as the case at bar: "No [] constitutional considerations arise [requiring rescission of plea agreement] . . . where the [sentence] is illegal because it impermissibly authorized a [sentence] *exceeding* the maximum allowed by law." *Coy*, 27 P.3d at 802. The *Coy* court found that distinction made simple modification of the sentence both appropriate and necessary.

The starkly ludicrous impact of the *Howell I* Court's wholesale rescission of the plea agreement is highlighted when considering the substance of the error below. Here, the correction of sentence would have resulted simply in petitioner's parole *eligibility* five years sooner. Nothing whatsoever suggests that petitioner would be released on parole at that time, or even five years later, at the time the State originally believed he would be eligible. As such, correction of petitioner's sentence cannot even be fairly stated as necessarily resulting in a different period of incarceration: any change in the actual period of incarceration is purely hypothetical. *See Coy*, 27 P.3d at 802 (finding correction of sentence which only altered "*possibility* of up to lifetime probation" was not material alteration (emphasis in original)). Such a change is hardly the frustration of purpose required to rescind the agreement, nor does rescission of the plea agreement properly place the burden of this admitted mistake of law on the State, where it firmly belongs. Like the courts above, the State must be charged with knowledge of its own law and any error in that regard rectified at the option of the defendant.

Accordingly, while I concur in the majority's resolution of the legal issues presented at this juncture of the case,[17] I reiterate my staunch opposition to the *Howell I* decision as legally incorrect.

---

[17] While I agree with the majority's resolution of the plea agreement formation issue, I note that the "serious Constitutional issue" identified by the circuit court is not squarely on point with the law of the case doctrine or mandate rule, as analyzed by the majority. The mandate rule concerns relitigation of legal issues decided on appeal. The constitutional issue raised by the circuit court and briefed by the petitioner implicates potential due process concerns insofar as a harsher penalty is imposed upon remand—an issue which has been the subject of much discussion by the United States Supreme Court. I address this issue briefly for the sake of clarity and to place the argument into its proper context.

In *North Carolina v. Pearce*, 395 U.S. 711 (1969), the United States Supreme Court held that due process prohibits imposition of a heavier sentence after *retrial* without additional information justifying the harsher sentence. This rule was formed based on the concern that "vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial" and that the "fear of such vindictiveness" should be permitted to "unconstitutionally deter a defendant's exercise of the right to appeal[.]" *Id.* at 725. *See also Patton v. State of N. C.*, 381 F.2d 636 (4th Cir. 1967) ("[A] sentence may not be increased following a successful appeal, even where additional testimony has been introduced at the second trial."). Critically, these cases involve defendants who received a harsher sentence *on retrial* than the one they received by the *same judge* during their original trial, which was set aside on appeal. Neither involve vacated plea agreements.

In fact, the United States Supreme Court later contrasted the retrial scenario presented in *Pearce* with a case involving a vacated plea agreement. As briefly referenced by the majority, in *Alabama v. Smith*, 490 U.S. 794 (1989), the Court held that no presumption of vindictiveness arose when sentence imposed after trial was greater than that previously imposed after *guilty plea*. Like the instant case, Smith entered a guilty plea, which was vacated on appeal because it was not knowing and voluntary; on retrial he was convicted of all charges and received a penalty much higher than that to which he agreed in his plea agreement. The Court held that in this situation, an increased sentence is not likely to be due to vindictiveness, but rather the nature of plea agreements. In short, "[a] guilty plea may justify leniency," but where a trial ensues, that justification for leniency is removed. *Id.* at 802.

However, discussion of this issue is wholly speculative since we do not know what will become of Mr. Howell—whether he will plead, be tried, convicted, or what his penalty may be. As such, a claim of this nature is not ripe until a defendant does in fact receive a harsher penalty than he would have under the original plea agreement. *See State Farm Mut. Auto. Ins. Co. v. Schatken*, 230 W. Va. 201, 210 n.6, 737 S.E.2d 229, 238 n.6 (2012) (quoting 13B Fed. Prac. & Proc. Juris. § 3532.1 (3d ed.)) ("[R]ipeness asks whether there yet is any need for the court to act.").

13