499 A.2d 170

**Kenneth Lee OSBORNE**

v.

**STATE of Maryland.**

**No. 69, Sept. Term, 1985.**

Court of Appeals of Maryland.

Oct. 23, 1985.

Gary S. Offutt, Asst. Public Defender, Baltimore (Alan H. Murrell, Public Defender, Baltimore, on brief), for appellant.

Diane G. Goldsmith, Asst. Atty. Gen., Baltimore, (Stephen H. Sachs, Atty. Gen., Baltimore, on brief), for appellee.

Argued before MURPHY, C.J., SMITH, ELDRIDGE, COLE, RODOWSKY and COUCH, JJ., and EDWARD D. HIGINBOTHOM, Associate Judge of the Third Judicial Circuit (retired), specially assigned.

COLE, Judge.

This case presents the question of what is the maximum punishment for accessoryship after the fact to first degree murder. More specifically, we shall determine whether the punishment is life imprisonment, as prescribed by the murder punishment statute, or five years, as set forth by Maryland Code (1957, 1982 Repl.Vol.), Art. 27, § 626.

The facts giving rise to this controversy are as follows. Kenneth Lee Osborne, appellant, was indicted by a Prince George's County grand jury on September 15, 1982 for Osborne's involvement in the events surrounding the murders of George and Gerald Hayes. The indictment charged Osborne with two counts of use of a handgun in the commission of a crime of violence, two counts of accessory before the fact to murder, two counts of accessory after the fact to murder, and one count each of robbery with a deadly weapon and theft. By plea agreement, Osborne pled guilty to both counts of accessory after the fact to first degree murder. The evidence adduced at the plea hearing showed that Osborne was not the trigger man in either murder. Osborne had been present at the time of the killings, however, and he had assisted in removing the bodies from the scene.

The court sentenced Osborne to life imprisonment with reference to the count of accessoryship after the fact to the murder of George Hayes and suspended Osborne's serving all but twenty years of that term. As to the count of accessory to the murder of Gerald Hayes, the court sentenced Osborne to serve thirty years and suspended all but ten years of the sentence. Following the sentencing, the State entered a nolle prosequi to the remaining counts.

■ On appeal, the Court of Special Appeals, in an unreported per curiam opinion, affirmed, holding that because the issues raised on appeal were not raised at the trial level, Maryland Rule 1085 precluded review.[1] We granted certiorari to consider the important questions presented.

## I

■ Before addressing the parties' arguments as to the punishment of accessoryship after the fact to first degree murder, it will be useful to discuss the history, common law development and present day views of accessoryship after the fact. At common law and under present Maryland law,[2] a person can be guilty of a felony in four capacities: as a principal in the first degree, a principal in the second degree, an accessory before the fact, or an accessory after the fact. *See* 4 W. Blackstone, *Commentaries* * 34–40; 2 J. Stephen, *A History of the Criminal Law of England* ch. 22, at 229–31 (1883). An accessory after the fact is one who, knowing a completed felony has been committed, harbors and protects the felon or assists him to avoid capture or punishment. *Watson v. State,* 208 Md. 210,

---

**1.** Our holding in *Walczak v. State,* 302 Md. 422, 427, 488 A.2d 949, 951 (1985), which was decided after the Court of Special Appeals rendered its opinion in this case, disposes of this issue. In *Walczak,* we held that where the trial court has allegedly imposed an illegal sentence, the issue may be reviewed on direct appeal even if no objection was made in the trial court. Thus, Osborne did not waive his right to appeal by failing to raise this issue at trial level.

**2.** Judge Levine wrote in *State v. Williamson,* 282 Md. 100, 111, 382 A.2d 588, 594 (1978) (Levine, J., and Eldridge, J., concurring) that "Maryland retains accessoryship in virtually the same form as it existed in Blackstone's day." Since *Williamson,* however, we have made certain changes in the law of accessoryship. In *Lewis v. State,* 285 Md. 705, 716, 404 A.2d 1073, 1079 (1979), we held that henceforth an accessory may be tried even though the principal had not been sentenced or tried. In *Jones v. State,* 302 Md. 153, 160–61, 486 A.2d 184, 188–89 (1985), we held that an accessory may be convicted of a greater crime than that for which the principal is convicted and that the rule prohibiting the accessory's conviction of a higher crime is applicable only when the principal is tried first or both are tried at the same time.

217–18, 117 A.2d 549, 552 (1955); 4 W. Blackstone, *supra,* at 37; 2 J. Stephen, *supra,* ch. 22, at 231; R. Gilbert & C. Moylan, *Maryland Criminal Law: Practice and Procedure* § 21.0 (1983).[3] At early common law, an accessory after the fact received the same punishment for his offense as the principal. If the principal was subject to death, then the accessory after the fact would be subject to death. 4 W. Blackstone, *supra,* at 39; 2 J. Stephen, *supra,* ch. 22, at 231.

Noting this lack of difference in punishment, Blackstone posed and answered the logical question:

> Why then, it may be asked, are such elaborate distinctions made between accessories and principals, if both are to suffer the same punishment? For these reasons. 1. To distinguish the nature and denomination of crimes, that the accused may know how to defend himself when indicted.... 2. Because, though by ancient law the rule is as before laid down, that both shall be punished alike, yet now by statutes relating to the benefit of clergy a distinction is still made between them: accessories *after* the fact being still allowed the benefit of clergy in all cases; which is denied to the principals, and accessories *before* the fact, in many cases; as in petit treason, murder, robbery, and wilful burning.

4 W. Blackstone, *supra,* at 39 (emphasis in original).

The benefit of clergy was a common law defense which had its origins in the clergy's insistence that it was not amenable to the secular courts for any crime. *See generally* 2 M. Hale, *Historia Placitorum Coronae: The History*

---

**3.** Judges Gilbert and Moylan note that four elements must be proved to show accessoryship after the fact:

(1) A felony must have been committed by another prior to the accessoryship; (2) the accessory may not be a principal, of either degree, in the commission of a felony; (3) the accessory must know of the commission of the felony ... by the person received, comforted or aided; and (4) the accessory must personally act so as to help or assist the felon to avoid apprehension, detection or arrest for the crime.

R. Gilbert & C. Moylan, *supra,* § 21.4–2.

*of the Pleas of the Crown* ch. 44 (1st American ed.1847);  2
W. Hawkins, *A Treatise of the Pleas of the Crown* ch. 33
(8th ed.1824).   Upon successfully asserting the defense
(praying his clergy), the member of the clerical order was
turned over to the ecclesiastical courts, which handed down
much more lenient punishments than did the secular tribu-
nals.  *See* 2 W. Hawkins, *supra,* ch. 44, § 1;  1 *Russell on
Crime* ch. 4, at 131 (11th ed.1958).   The privilege was later
extended to those who qualified to be admitted into the
clergy—the test being whether the defendant could read.   2
W. Hawkins, *supra,* ch. 33, § 5.

Although at early common law dispensation by benefit of
clergy was accomplished by the immediate transfer of the
defendant from the lay courts to the courts of the bishops
to be tried before a jury of clerks, the law later required
that the offender, before being turned over to the ordinary
for punishment, first be tried by the lay courts—which were
able, upon the conviction, to secure for the Crown the
convict's chattels.  1 Russell, *supra,* ch. 4, at 131–32.   Stat-
utes were later passed which set forth that, in lieu of being
delivered to the ordinary, the defendant would be branded
upon the brawn of his left thumb and then imprisoned for a
period not exceeding one year.   2 M. Hale, *supra,* ch. 44, at
254;  2 W. Hawkins, *supra,* ch. 33, §§ 124–25 (quoting 18
Eliz., ch. 7, § 3).   Subsequent statutes replaced the brand-
ing with a fine or public or private whipping, and a six
month to two year imprisonment.   2 W. Hawkins, *supra,*
ch. 33, § 135 (quoting 19 Geo. 3, ch. 74, § 3).

From the 12th century onwards, Parliament used benefit
of clergy as a means of varying and distinguishing one
crime from another, and excluded the benefit where crimi-
nal policy demanded more harsh punishment.   1 Russell,
*supra,* ch. 4, at 132.   Although the benefit of clergy had at
first applied to all felonies unless it was expressly excluded
by statute, the exceptions to the rule soon expanded until
principals and accessories *before* the fact to most felonies
were denied benefit of clergy by statute.  *See* 2 M. Hale,
*supra,* chs. 45–50;  2 W. Hawkins, *supra,* ch. 33, §§ 54–109.

The defense of benefit of clergy remained as to the accessories after the fact, however. Thus, those convicted of this crime generally received short term sentences. 1 J. Chitty, *A Practical Treatise on the Criminal Law* ch. 5, at 267 (4th ed. 1841).

The benefit of clergy was abolished by statute in England in 1827. 7 & 8 Geo. 4, ch. 28, § 6 (1827). Though benefit of clergy was abrogated, all formerly clergyable offenses were exempted from punishment of death. 7 & 8 Geo. 4, ch. 28, § 7 (1827). From 1827 to 1848, an accessory after the fact in England was once again amenable to the same punishment (except for death) as the principal. In 1848, a statute was passed which set the maximum penalty for accessories after the fact at two years imprisonment, 24 & 25 Vic., ch. 95, § 4 (1848), except in cases of accessory after the fact to murder, where the punishment was ten years imprisonment. 24 & 25 Vic., ch. 100, § 67 (1848).

Maryland abolished the benefit of clergy by 1809 Md. Laws ch. 138, § 11 (now Maryland Code (1957, 1982 Repl. Vol.), Art. 27, § 626). Art. 27, § 626 provides an eighteen month to five year penalty for all felonies "heretofore deemed clergyable ... except in those cases where some other specific penalty is prescribed by this Code."

Currently, in virtually every jurisdiction an accessory after the fact is not considered a party to the principal felony and is not subject to the punishment of the principal. *See generally* W. LaFave & A. Scott, Jr., *Handbook on Criminal Law* § 66, at 522, 524; 1 *Wharton's Criminal Law* § 35, at 182–84 (14th ed.1978). The statutes do not treat accessories after the fact as parties to the principal felony; rather, the statutes recognize the conceptual distinction between an accessory after the fact and other offenders and view the accessory after the fact as a separate offender who has obstructed justice. 1 Wharton, *supra*, § 35 at 182. The vast majority of American jurisdictions address the punishment for accessories after the fact without reference to the principal crime and set penalties

ranging from six months to ten years, the most common of which is five years.

The justification for the modern treatment of accessoryship after the fact parallels the common law justification for not excepting accessories after the fact from benefit of clergy. As Blackstone noted, accessoryship after the fact "is always an offense of a different species of guilt, principally tending to evade the public justice." 4 W. Blackstone, *supra*, at 40. As to the modern treatment of accessoryship after the fact, Professors LaFave and Scott write:

> This development whereby the accessory after the fact is dealt with in a distinct way is a most appropriate one and does not conflict at all with the modern tendency to abolish the distinctions between principals in the first degree, principals in the second degree, and accessories before the fact. The latter three types of offenders have all played a part in the commission of the crime and are quite appropriately held accountable for its commission. The accessory after the fact, on the other hand, had no part in causing the crime; his offense is instead that of interfering with the processes of justice and is best dealt with on those terms.

W. LaFave & A. Scott, Jr., *supra,* § 66, at 524; *see also* L. Hocheimer, *Crimes and Criminal Procedure* § 26 (2d ed. 1904).

The determination of the proper punishment in Maryland for accessories after the fact to first degree murder requires an examination of present and past statutory provisions in light of the common law principles of accessoryship. Because accessoryship after the fact to first degree murder was a clergyable offense at common law, we turn to the statute which abolished benefit of clergy in Maryland. Maryland Code (1957, 1982 Repl.Vol.), originally 1809 Md. Laws ch. 138, § 11, sets forth:

> All claims to dispensation from punishment by benefit of clergy are forever abolished; and every person convicted of any felony heretofore deemed clergyable shall be

sentenced to undergo a confinement in the penitentiary for any time not less than eighteen months nor more than five years, *except in those cases where some other specific penalty is prescribed by this Code.* And every person who shall be convicted of any felony heretofore excluded from the benefit of clergy, and not specified in this Code, shall be sentenced to undergo a confinement in the penitentiary for not less than five nor more than twenty years. [Emphasis supplied.]

The next question to be answered is whether the legislature excepted accessoryship after the fact to first degree murder from the purview of this statute by prescribing a penalty for first degree murder itself. As first enacted in 1809, the first degree murder punishment statute read:

> Every person convicted of murder in the first degree, his *aiders, abettors and counsellors,* shall suffer death, by hanging by the neck.

1809 Md.Laws ch. 138, § 4 (emphasis supplied).

As amended in 1908 the punishment statute provided:

> Every person convicted of murder in the first degree, *his or her aiders, abettors and counsellors,* shall suffer death, or undergo a confinement in the penitentiary of the State for the period of their [sic] natural life, in the discretion of the court before whom such person may be tried.

1908 Md.Laws ch. 115 (emphasis supplied).

In amending the murder punishment statute in 1975, the legislature created a section entitled "aiding, abetting or counselling" which read:

> Every person convicted of aiding, abetting or counselling *the commission* of any murder ... shall be sentenced to life imprisonment.

Maryland Code (1958, 1976 Repl.Vol.), Art. 27, § 413(c) (emphasis supplied).

The punishment statute was again amended in 1978. Chapter 3, Acts of 1978 repealed § 413 and enacted a new section, now Maryland Code (1957, 1982 Repl.Vol.), Art. 27,

§ 412, which omitted all reference to "aiders, abettors and counsellors."

The State argues that the words "aiders, abettors and counsellors" in the pre-1978 statute evince the intent of the legislature to include accessories after the fact in the punishment for first degree murder. Furthermore, the State contends that the 1978 amendment to the statute does not repeal all penalties as to accessories because the words "aiders, abettors and counsellors" were merely surplusage in the original statute. The State posits that because accessoryship after the fact is not a distinct substantive offense in Maryland, it is part and parcel of the principal crime, in this case, first degree murder, and is therefore subject to the same penalty as the principal crime.

We disagree. Neither the present version of the statute nor past enactments show a legislative intent to include accessories after the fact in the punishment for first degree murder. As it appears today, the punishment statute makes no reference to accessories. Though it is clear that one who assists or is accessory to the principal in the commission of the crime is subject to the same punishment as the principal, an accessory after the fact does not fall into this category because he does not assist in the crime's commission. His assistance consists of a *post facto* act which is in the nature of an obstruction of justice. The presence of the words "aider, abettor and counsellors" in the pre-1978 enactments does not alter this interpretation; indeed, these words strengthen the conclusion that the first degree murder punishment provision does not apply to accessories after the fact. The 1975 version of the statute expressly stated that those who aid, abet or counsel the *commission* of the murder will be punished by life imprisonment. Again, an accessory after the fact plays no part in the commission of the crime.

Furthermore, an examination of case law and commentary shows that the words, "aider, abettor and counsellor" do not apply to accessories after the fact. In *Anello v. State,*

201 Md. 164, 168, 93 A.2d 71, 72–73 (1952), this Court defined the words "aider" and "abettor":

> The legal definition of the word "aider" is not different from its meaning in common parlance. It means one who assists, supports or supplements the efforts of another. The word "abettor" means in law one who instigates, advises or encourages the commission of a crime. Thus the word "abet" may import that one is present at the commission of a crime without giving active assistance.... To be an aider or abettor it is not essential that there be a prearranged concert of action, although, in absence of such action, it is essential that one should in some way advocate or encourage the *commission* of the crime. [Emphasis supplied.]

It could be argued that the word "aider" encompasses accessories after the fact—since these offenders *assist* the perpetrator to evade justice and *support* the perpetrator after the crime has been committed. *See State v. Empey,* 79 Iowa 460, 461, 44 N.W. 707, 707 (1909) (noting in dicta that the word "aid" indicates accessory after the fact). The word aider must be read within its context, however, not standing alone. As Sir Matthew Hale wrote:

> When [the word "aid"] is joined only with those that import a consent to the offense, (as *procurers, counsellors, aiders, abettors,* or *counsellors, commentators and aiders* ) as in the statute of 6 *Eliz. cap* 11. for clipping, 18 *Eliz. cap.* 1 for impairing, 1 *Mar. sess.* 2 *cap* 6 for counterfeiting foreign coin, it must be construed of those that are *aiders* in the offense, and not bare receivers of the person.

1 Hale, *supra,* ch. 21, at 236 (emphasis in original). See also *id.,* ch. 28, at 376 construing the words "procurers, aiders, and abettors" to mean "aiders in the fact, not aiders of their persons, as receivers and comforters...." Other commentators agree with Hale. *See generally* J. Bishop, *Commentaries on the Law of Statutory Crimes* ch. 27, § 272 (3d ed. 1901) (citing 1 Hale, *supra,* at 376); 1 W. Burdick, *The Law of Crime* § 225, at 305 (1946) ("the term

'aid and abet' does not apply, however, to accessories after the fact"); 2 Hawkins, *supra,* ch. 29, § 11. Indeed, in addressing the effect of the words "aiders and abettors" in a statute which excepts a crime from benefit of clergy, J. Chitty wrote: "a statute which takes away clergy from aiders and abettors *does not by those words include accessories·after the fact....*" 1 J. Chitty, *supra,* ch. 5, at 274 (emphasis supplied).

■ Cases which apply the term "aider and abettor" generally equate this term with "principal in the second degree." As Judge Orth wrote for the Court of Special Appeals in *Handy v. State,* 23 Md.App. 239, 251, 326 A.2d 189, 196 (1974):

> Although the ancient authorities regarded persons aiding and abetting in the commission of a crime as accessories at the fact, it seems that in order to avoid the technicalities of the law, aiders and abettors were early held to be principals in the second degree. 22 C.J.S. § 85; *Commonwealth v. Knapp,* 9 Pick. 496, 20 Am.D. 491.

*See also Morei v. United States,* 127 F.2d 827, 831 (6th Cir.1942) ("to constitute one an aider and abettor, he must not only be on the ground, and by his presence aid, encourage, or incite the principal to commit the crime, but he must share the criminal intent or purpose of the criminal."); *Foster v. Commonwealth,* 179 Va. 96, 98, 18 S.E.2d 314, 315 (1942) (distinguishing "aider and abettor" from accessory). The word "counsellor" is generally construed to be synonymous with accessories *before* the fact. *See* 1 M. Hale, *supra,* ch. 21, at 236. It thus becomes clear that the term "aiders, abettors and counsellors" applies to principals in the second degree and accessories before the fact, but not to accessories after the fact.

The State maintains that the legislature intended that an accessory after the fact would receive the same punishment as the principal. To adopt this view, however, is to ignore the history and common law development of the offense itself. At the time of Maryland's enactment of the Criminal Code of 1809, accessoryship after the fact was, in effect, a

distinct crime separate from the principal offense. It was required that an accessory after the fact be named in the indictment, separately from the principal. Furthermore, accessoryship after the fact qualified for benefit of clergy— which resulted in a separate and less harsh punishment than was imposed on the principal offender.

The State points to the English abolition of benefit of clergy in 1827, and notes that at that time the accessory after the fact was subject once again to the same penalty as the principal. The predecessor to Art. 27, § 626 worked, however, not as the English statute did to completely destroy the effect of benefit of clergy. The statute merely replaced benefit of clergy with a statutorily lenient penalty. Only where Maryland policy dictated that a crime warranted a different punishment than that prescribed by Art. 27, § 626 did the legislature remove the effect of the benefit of clergy by specifying an exact penalty in the Code.[4]

This Court has implicitly recognized that accessoryship after the fact is an offense separate and distinct from the principal crime in holding that an accessory after the fact is not an accomplice in the commission of a crime (and thus not a witness whose testimony must be corroborated). *Watson v. State,* 208 Md. 210, 220, 117 A.2d 549, 554 (1955). In so holding, the Court noted that the "test for determining whether a person is an accomplice of a defendant charged with a felony is whether he could be indicted and punished for the crime charged against the defendant." *Id.* at 217, 117 A.2d at 552. The Court then quoted 1 Bishop, *Criminal Law* § 692 (9th ed.) to the following effect:

> In reason also, one who renders this assistance, thus adding his will to an evil thing after another has done it, does not thereby become a partaker in the guilt because only when an act and evil intent concur in time, is a crime committed. *Therefore it is not from the reasoning of*

---

**4.** The 1809 criminal code prescribed specific penalties for at least four crimes which had been clergyable at common law: manslaughter; petty larceny; polygamy; and for being rogue and vagabond:

*the law, but from ancient practice confirmed by modern, that the helper of a felon after the fact is classed as an accessory.* This technical rule has become too fundamental in the common law of crime to be overcome by judicial reasoning.

The origin of this blemish in our legal classification is not quite certain. We may presume that anciently the helping of a felon to elude punishment was deemed equal in evil with the act of him who was helped; that the judges, who gave shape to our common law, thought it not safe in a capital case to convict the one rendering this assistance in advance of the one assisted; and, therefore, this second offense, scientifically independent of the first, was called accessorial, and its perpetrator an accessory.

208 Md. at 217, 117 A.2d at 552–53 (emphasis supplied).

The State also argues that the present statutory form indictment for murder is supportive of its position. The State asserts that an accessory after the fact need not be specifically charged with that offense. In *State v. Williamson*, 282 Md. 100, 107–10, 382 A.2d 588, 592–93 (1978), we held that an accessory *before* the fact need not be named as such in an indictment. The Court reasoned that because the "distinction between accessories before the fact and principals continually grows more illusory," *id.* at 110, 382 A.2d at 593, it is no longer necessary to require that one be specifically charged as accessory before the fact in an indictment. The rationale in *Williamson* does not hold true for accessoryship after the fact. As previously noted, accessoryship after the fact is a distinct offense, separate from the principal crime.

The State next contends that Art. 27, § 626 is inapplicable because that section is only available to "any felony heretofore deemed clergyable," and accessoryship after the fact is neither a statutory felony nor a felony at common law. To the contrary, an accessory after the fact was a felon at common law. 2 J. Stephen, *supra,* at 237. *See also* 4 W. Blackstone, *supra* at 39.

■ The State asserts that neither this Court nor the Court of Special Appeals has restricted the punishment for an accessory after the fact to first degree murder to five years and cites *Randall v. Warden*, 208 Md. 667, 669, 671, 119 A.2d 712, 713, 715 (1956) and *McClain v. State*, 10 Md.App. 106, 117 n. 2, 268 A.2d 572, 578 n.12 (1970). In neither *Randall* nor *McClain* was the issue before the court to be decided, and any reference as to the penalty for accessoryship after the fact was dictum. With the issue being clearly drawn before us, we find that application of Art. 27, § 626 produces a punishment for accessoryship after the fact which parallels those set by statute in other jurisdictions, and which is consistent with the idea that accessoryship after the fact is a distinct offense involving a lesser guilt than the principal crime. Thus, we hold that the punishment for accessories after the fact must be determined by reference to Art. 27, § 626, which limits imprisonment to a maximum sentence of five years.

## II

The State finally contends that it should be allowed to rescind its plea agreement because the sentence is too lenient and not what it expected for the criminal conduct of the defendant.

In *State v. Brockman*, 277 Md. 687, 697, 357 A.2d 376, 382–83 (1976), we noted that "the standard to be applied to plea negotiations is one of fair play and equity under the circumstances of the case...." The State argues that, applying this standard here, the plea bargain should be stricken because "a material part of the plea bargain has not been met."

■ We agree that a defendant may not repudiate a plea agreement while retaining the benefits of that agreement. *See Sweetwine v. State*, 288 Md. 199, 421 A.2d 60 (1980). Osborne has not, however, breached his bargain with the State.

The State received its consideration from Osborne; he pled guilty to both counts of accessoryship after the fact and testified implicating the principal as the shooter. At no point did the State recommend or promise to recommend a specific sentence for Osborne. Because the State did not bargain as to the length of appellant's sentence, it cannot successfully argue that its consideration was undermined.

When the State and a defendant agree only to the plea to be entered in the case, both risk the sentence which the court will ultimately impose. *See Guzman v. Morris,* 644 F.2d 1295, 1298 (9th Cir.1981) (quoting *Way v. Superior Court,* 74 Cal.App.3d 165, 180, 141 Cal.Rptr. 383, 393 (1977)). Just as a defendant may not withdraw a guilty plea due to surprise at the severity of his sentence, *see e.g., United States v. Schneer,* 194 F.2d 598, 600 (3d Cir.1952); *Stidham v. United States,* 170 F.2d 294, 298 (8th Cir.1948); *Abrams v. Warden,* 333 F.Supp. 612, 613 (D.Md.1971); J. Bond, *Plea Bargaining and Guilty Pleas* § 7.15 (2d ed. 1982), the State may not revoke its promise as a result of its surprise at the length of the sentence imposed. *Guzman, supra,* at 1298; *Way v. Superior Court,* 74 Cal.App.3d 165, 180, 141 Cal.Rptr. 383, 393 (1977).

The State cites *Rojas v. State,* 52 Md.App. 440, 450 A.2d 490 (1982) as supportive of its position. In *Rojas,* the State agreed to drop several charges against Rojas and to recommend a ten year suspended sentence with five years of probation on the condition that Rojas plead guilty to second degree rape and that, as a prerequisite to probation, Rojas "leave the country within 90 days." *Id.* at 441, 450 A.2d at 491. The Criminal Court of Baltimore entered an order in accordance with the terms of the bargain. On appeal, the Court of Special Appeals held that the trial court lacked authority to compel Rojas to leave the country, and the intermediate court thus vacated that part of the sentence. Because the court felt that the State entered the agreement in expectation that the criminal court could compel the departure, and because "it would be unfair to allow [Rojas]

to avoid his responsibilities under the plea agreement, yet demand the benefit of the bargain," *id.* at 445, 450 A.2d at 494, the court also vacated the plea agreement.

The distinction between *Rojas* and the case at bar is readily apparent. In *Rojas*, the State bargained to nolle prosequi the remaining charges against the defendant and to recommend probation on the condition that he not only plead guilty to second degree rape, but also that he leave the country. No such *quid pro quo* existed as to the sentencing of Osborne. The plea agreement between Osborne and the State simply consisted of Osborne's promise to plead guilty to two counts of accessoryship after the fact and the State's promise to nolle prosequi the remaining counts against Osborne. At the sentencing hearing, both Osborne and the State attempted to influence the judge's sentencing decision; there was no evidence that the parties expected Osborne to be sentenced to a specified term of imprisonment. Indeed, the judge might have imposed consecutive life terms upon Osborne without suspending any time on either sentence, or he might have suspended all but a few years on both sentences.

The State's position boils down to an assertion that the plea agreement should be vacated because the State could not anticipate the application of a five year sentence under Art. 27, § 626. Such a unilateral surprise is unpersuasive, especially in light of the fact that the State's non-expectation stems from its failure to detect the application of a Maryland statute. The State must be held to be aware of the common law and the statutes of Maryland. Although this Court has not heretofore spoken as to the punishment of accessories after the fact, the State should have at least been aware of the possibility of the application of Art. 27, § 626, and it should have bargained with Osborne accordingly. We will not allow the State to rescind this plea agreement merely because it made a bad bargain.

For the above reasons, the judgment of the Court of Special Appeals is reversed.

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED AND CASE REMANDED TO THAT COURT TO VACATE THE SENTENCE OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AND REMAND TO THAT COURT FOR A RESENTENCING PROCEEDING CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY PRINCE GEORGE'S COUNTY.