69 A.3d 1210

**Hugo M. FALERO**

v.

**STATE of Maryland.**

**No. 0184, Sept. Term, 2012.**

Court of Special Appeals of Maryland.

June 28, 2013.

574

Dino E. Flores, Jr. (Schaffer, Black & Flores, PC, on the brief), Frederick, MD, for Appellant.

Sarah P. Pritzlaff (Douglas F. Gansler, Attorney General, on the brief), Baltimore, MD, for Appellee.

Panel: ZARNOCH, HOTTEN and JAMES A. KENNEY, III, (Retired, Specially Assigned), JJ.

ZARNOCH, J.

In July of 2011, appellant Hugo Falero pled guilty to first degree assault in the Circuit Court for Montgomery County. Under terms of a plea agreement, the court ordered a pre-sentence investigation ("PSI") and agreed to make no change in Falero's bond conditions. The court then directed him to appear for sentencing in October. However, Falero fled the country, going to El Salvador, then to Uruguay, and finally to Puerto Rico. As a result, the pre-sentence investigation agent could not conduct the investigation and Falero did not appear at his sentencing. He was not found until six months later, when he was brought back to Maryland. At the State's request, the circuit court vacated Falero's plea agreement returning the case to square one, as if the guilty plea had never been entered. On this appeal, we are asked whether the court was permitted to take this action. Under the circumstances of this case, our answer is yes.

## FACTS AND LEGAL PROCEEDINGS

At approximately 1:00 a.m. on October 23, 2010, Brian and Kathleen Calabrese were driving out of a parking garage in Bethesda. At the same time, Hugo Falero, Cathleen Burgos, Alberto Flores, and Antonio Gutierrez were walking through the garage. As the two groups passed, Gutierrez struck the passenger side of the car. Mr. Calabrese stopped the car and got out to look at the area where the car was struck. Falero punched Mr. Calabrese in the head and then Flores began fighting with Mr. Calabrese. Mrs. Calabrese got out of the car and Falero, Burgos, and Gutierrez began assaulting her. One civilian witness said Falero was kicking Mrs. Calabrese. When Mr. Calabrese tried to help his wife, those assaulting his wife started to assault him. Eventually, a passing civilian flagged down an officer. Although Burgos, Flores, and Gutierrez stopped their assaults, the officer had to physically stop Falero.

■ The State indicted Falero on November 18, 2010 on two counts of first degree assault, two counts of conspiracy to commit first degree assault, and resisting arrest. An Assistant State's Attorney sent a letter to Falero's counsel on January 19, 2011, which offered Falero the opportunity to enter a plea agreement. In addition to offering a minimum sentence in exchange for a guilty plea, the letter stated:

A further condition of this agreement is the understanding that your client has no prior adult criminal history. Should we learn that your client's criminal record differs from our current understanding or should your client become involved in any criminal conduct or fail to appear for any other scheduled court appearance in this case or any other pending criminal matter between the time of our conference and the time of sentencing, we reserve the right to rescind this plea offer.

The parties came to a final agreement on July 20, 2011. The "Plea Memorandum" outlined the terms of this agreement:

1. The Defendant will enter a plea of guilty to the first count of Indictment No. 118212 charging the offense of First Degree Assault and amended to include victim Kathleen Calabrese.

2. Pursuant to Rule 4–243 of the Maryland Rules of Procedure, the parties are asking the Court to bind itself to an agreed sentence of eighteen months executed incarceration.

3. The parties are otherwise free to allocate with respect to a suspended sentence, probation and the terms and conditions thereof.

4. The defense requests a Pre–Sentence Investigation Report to which the State has no objection.

5. The State is not requesting a change in the Defendant's bond conditions pending sentencing.

On July 27, 2011, Falero pled guilty to first degree assault. As the hearing began, the State read all of the above terms into the record. Falero did not initially accept the State's factual proffer. He denied that he kicked Mrs. Calabrese and instead said that he punched both her and Mr. Calabrese in

the face. The court accepted Falero's plea, stated that bond would remain the same, and ordered a PSI.[1] The court told Falero that he would be contacted for the PSI and the circuit judge stated: "Please you need to attend the meeting. If you fail to attend I'll hold it against you. Okay?" Falero responded "yes, sir." The court's final words to Falero were "Sir, your sentencing is October 5, 2011, at 4:00 p.m. You must be present and you must be on time. Okay?" Falero again assented.

After repeatedly trying to reach Falero by phone, the PSI agent visited Falero's reported address on September 12. Falero was not there but his father was. His father said that Falero stayed at the address sporadically. He did not provide the agent with Falero's location but did say that Falero contacted him by phone occasionally. Over the next couple weeks, the agent called the reported address five separate times and left a message each time. Finally he sent a letter to the address on September 16 directing Falero to report for an interview on September 25. He received no response and Falero did not report for the interview. On October 4, the PSI report was filed, stating that Falero could not be reached after numerous attempts. Falero failed to appear for the sentencing and the court issued a bench warrant for his arrest. Falero was brought to court on the warrant on January 15, 2012. On January 31, Falero filed a motion to enforce the plea agreement, and on February 17, the State filed a request to vacate the plea agreement and an opposition to Falero's motion to enforce the plea agreement.

The circuit court held a hearing on February 21. At the hearing, the Montgomery County Sheriff Office's arrest summary revealed that Falero had been detained in Puerto Rico

---

1. The court has the authority to grant a pre-sentence investigation under Md. Rule 4–341. A "pre-sentence investigation" is an "[i]nvestigation of the relevant background of a convicted offender, usually conducted by a probation officer attached to a court, designed to act as a sentencing guide for the sentencing judge." *Germain v. State,* 363 Md. 511, 522–23, 769 A.2d 931 (2001) (citing Black's Law Dictionary 1184 (6th ed.1990)).

and returned to Montgomery County after extradition pro-
ceedings. The report showed that Falero had first gone to El
Salvador, then Uruguay, and finally, Puerto Rico. Falero was
with one of his co-defendants, Burgos, and a minor child. The
circuit court asked for an explanation for failure to appear, but
Falero's only position was that he did not need to provide an
explanation and that he had an absolute right to enforcement
of the plea agreement.

■ The circuit court determined that after it ordered the
PSI, Falero was completely uncooperative with the PSI agent.
He did not show up for the meetings, did not return phone
calls, and provided no information. The court also found that
it had continued Falero on his bond as part of the plea
agreement and Falero violated his bond condition when he did
not attend his sentencing. Based on the circumstances of
Falero and Burgos' flight, the court decided that Falero had
induced Burgos and a minor child to flee the United States
and that when Falero pled guilty, he had no intention of
cooperating with the PSI or attending the sentencing. The
court concluded that Falero had lied to the court when he
entered his guilty plea and, therefore, fraudulently induced
the court to accept the plea. In light of these findings, the
court vacated the plea agreement. The court also stayed the
proceedings in case Falero chose to appeal.[2] This appeal
followed.

## QUESTIONS PRESENTED

Falero presents one question for our review, which we have
divided into two:[3]

---

2. A ruling on a motion to enforce a plea agreement is a collateral order,
and therefore, immediately appealable. *See Rios v. State,* 186 Md.App.
354, 364–66, 974 A.2d 366 (2009).

3. Falero's question is:
Did the Circuit Court err when it ordered the binding plea agreement
vacated?

1. Did Falero procure the court's acceptance of his guilty plea through fraud and breach the terms of his plea agreement?

2. When a plea agreement does not explain if and when the guilty plea can be vacated, can the court vacate the plea when the defendant obtained the court's acceptance of the plea through fraud or breached the terms of the agreement?

Answering both questions in the affirmative, we affirm the circuit court's rulings and vacate

Falero's guilty plea.

## DISCUSSION

### I. Factual Findings

Falero's framing of the issue is deceptively simple. He would limit our focus to the circuit court's finding that Falero failed to appear at sentencing. But a careful review of the record reveals a broader set of findings. The court found that Falero obtained the court's acceptance of his guilty plea through fraud and breached the terms of his plea agreement. More specifically, the circuit court found that Falero did not intend to follow through with the plea agreement when the court accepted his guilty plea, that he convinced a co-defendant to flee the country with him, that he did not cooperate with the PSI, and that he did not follow the terms of his bond conditions. We therefore must expand out review beyond Falero's proposed limits to address whether the court erred in making those findings in support of vacating of the plea agreement.

The adequacy of the defendant's performance of his or her end of a plea bargain is a factual question, which we review under a clearly erroneous standard. *See Sifrit v. State*, 383 Md. 77, 95 n. 14, 857 A.2d 65 (2004). Under such a review, "[i]f there is any competent and material evidence to support the factual findings of the trial court, those findings cannot be held to be clearly erroneous." *L.W. Wolfe Enter., Inc. v. Md.*

*Nat'l Golf, L.P.,* 165 Md.App. 339, 343, 885 A.2d 826 (2005) (Citation and internal quotation marks omitted).

█ Every time the PSI agent tried to contact Falero to conduct the PSI, he did not respond, obviously because he had fled. It was only a little over a month after Falero pled guilty that the PSI agent tried to contact Falero and visited his home. Falero could not be reached then and even though his father was home, no one responded to the PSI agent's following five phone calls or his letter. The arrest summary explained that Falero originally went to El Salvador, then went to Uruguay, then was arrested after flying into Puerto Rico a traveling scenario obviously requiring advanced planning. It was discovered that he left the country with one of his co-defendants, Cathleen Burgos, and a young child. The warrant for their arrest was issued in October 2011, and they were not found in Puerto Rico until January. These actions—fleeing the country with one of his co-defendants, likely within one month of pleading guilty, traveling to several different countries, not returning to the United States for at least four months, and not returning on his own volition—are all pieces of competent and material evidence. From this evidence, one could find that Falero planned, before he pled guilty, to run and, therefore, fraudulently induced the court to accept his plea.

█ But even if we were to find that this evidence of fraudulent inducement was not competent and material, we are also convinced that there was sufficient evidence to support the court's finding that Falero breached the terms of the plea agreement. Plea agreement terms "are to be construed according to what a defendant reasonably understood when the plea was entered." *Tweedy v. State,* 380 Md. 475, 482, 845 A.2d 1215 (2004).

> The test for determining what the defendant reasonably understood at the time of the plea is an objective one. It depends not on what the defendant actually understood the agreement to mean, but rather, on what a reasonable lay person in the defendant's position and unaware of the

niceties of [the] law would have understood the agreement to mean, based on the record developed at the plea proceeding.

*Cuffley v. State*, 416 Md. 568, 582, 7 A.3d 557 (2010). Thus, "the terms of the plea agreement are to be made plain on the record, in the presence of the defendant, for the court to hear and accept or reject." *Id.* at 579, 7 A.3d 557. Additionally, ambiguous terms are resolved in favor of the defendant. *Id.* at 583, 7 A.3d 557.

This test was applied in *Baines v. State*, 416 Md. 604, 607, 7 A.3d 578 (2010), where the court agreed to sentence the defendant "within the guidelines." When the time came, the court sentenced the defendant to time above the guidelines, but suspended all but part of sentence so that the actual time served fell within the guidelines. *Id.* Although the Maryland Sentencing Guidelines Manual provides that suspended time is not considered in determining whether the sentence falls within the guidelines,[4] the Court of Appeals held that a reasonable lay person in the defendant's position would not understand that the guidelines were for actual time served only. *Id.* at 619–20, 7 A.3d 578. In other words, the defendant was told he could be sentenced to up to thirteen years, which a reasonable lay person would not understand to mean more than thirteen years as long as all but thirteen years is suspended. *Id.* at 620, 7 A.3d 578.

In our view, any reasonable defendant in Falero's position would have believed that compliance with a PSI and attendance at sentencing were conditions of his plea agreement.

When the State was reciting the terms of the agreement on the record, it said that it had no objection to a PSI. This was also part of the plea memorandum that Falero agreed to and was filed with the court. The circuit judge ordered a PSI, told Falero that someone would contact him to do the investigation, and stated that he would "hold it against him" if he did not

---

4. *See* Maryland State Commission on Criminal Sentencing Policy, Maryland Sentencing Guidelines Manual, ch. 12.1, at 42 (April 2005), http://www.msccsp.org/Files/Guidelines/manual_05.pdf.

comply. Unlike *Baines*, where the defendant might not have been aware that suspended time would not be counted when determining whether a sentence is within the guidelines, any defendant would have reasonably understood that if a PSI is ordered as part of the plea agreement, he must submit to the investigation to comply with the agreement. Of course, Falero did not abide by this condition, because he left the country and could not be reached.

The State also stated on the record, as one of the terms of the plea agreement, that it was not requesting a change in bond conditions pending sentencing. This was also a term set out in the plea memorandum the parties agreed to and provided to the court. The court stated that the bond would remain the same and told Falero that he had to show up for sentencing. One of the conditions of Falero's bond was that he "appear for hearing and/or trial as directed by the [c]ourt." Undeniably, being out on bond requires that the defendant appear for all matters related to his or her case. Thus, when the court orders, as a term of the plea agreement, that the bond remain the same, any reasonable defendant would be aware that he had to appear at sentencing as part of his plea agreement. In not appearing, Falero broke the bond condition and broke the expressed term in the plea agreement that his bond conditions would remain the same.

Although Falero argues that his appearance was not a required term of the agreement, he apparently personally understood that appearing for sentencing was required under his specific agreement. In this case, before formalizing the plea memorandum, the State's Attorney's Office sent Falero's counsel a letter offering Falero a plea. The letter specifically stated, "should your client ... fail to appear for any other scheduled court appearance in this case ... between the time of our conference and the time of sentencing, we reserve the right to rescind this plea offer." We have no doubt that Falero's counsel discussed this letter with him. Based on this letter, it would stretch the imagination to conclude that Falero did not reasonably understand appearance at sentencing to be

part of his plea agreement, even if it was not expressly stated in the memorandum.[5]

For these reasons, we conclude that neither the circuit court's factual finding that Falero fraudulently induced the court's acceptance of his plea agreement nor the finding that Falero breached specific terms in the agreement was clearly erroneous.

## II. Authority to Vacate Guilty Plea

We next address whether the circuit court had the authority to vacate Falero's plea agreement. Whether the circuit court has this power presents a question of law, which we review *de novo. Sifrit,* 383 Md. at 93, 857 A.2d 65. Falero contends that once the court accepted his guilty plea it had no authority to undo the agreement. He grounds his argument in the absence of any mention of consequences in the agreement for failure to attend sentencing and in the failure of the court to advise him on the record that his guilty plea could be vacated if he failed to appear.

If Falero's plea agreement did not include the provisions that a PSI would be ordered and his bond conditions would remain the same and his failure to appear at sentencing was the court's only finding, Falero might be on more solid ground. Given these facts, however, he faces a more formidable hurdle. Falero is not entirely correct that "consequences" were not part of the agreement. The circuit judge did indicate that he would "hold it against" Falero if he did not comply with the PSI. But even in the absence of a more

---

**5.** Indeed, some courts have held that appearance at sentencing is an implicit term whether or not it is communicated to the defendant. *See United States v. David,* 58 F.3d 113, 115 (4th Cir.1995) (holding that "[b]y jumping bail and failing to appear, [the defendant] violated the plea agreement and the government's obligation to move for a downward departure based on substantial assistance ended."); *see also Berg v. State,* 131 Idaho 517, 960 P.2d 738, 740 (1998) ("[I]t was implicit in the agreement that Berg must appear at the sentencing hearing"). Maryland, however, has determined that the only terms of a plea agreement are the ones stated on the record before the court accepts the defendant's guilty plea. *See Tweedy,* 380 Md. at 487, 845 A.2d 1215.

specific reference to remedies for breach, we conclude that when the court discovers that a defendant obtained acceptance of a plea agreement by fraud or materially breached any of its terms, it may void the agreement—and vacate the guilty plea. We explain.

## A. General Principles

Plea agreements are a vital part of Maryland's criminal justice system. *Cuffley*, 416 Md. at 577, 7 A.3d 557. The importance of plea agreements cannot be overstated:

> For a defendant who sees slight possibility of acquittal, the advantages of pleading guilty and limiting the probable penalty are obvious—his exposure is reduced, the correctional processes can begin immediately, and the practical burdens of a trial are eliminated. For the State there are also advantages—the more promptly imposed punishment after an admission of guilt may more effectively attain the objectives of punishment; and with the avoidance of trial, scarce judicial and prosecutorial resources are conserved for those cases in which there is a substantial issue of the defendant's guilt or in which there is substantial doubt that the State can sustain its burden of proof. It is this mutuality of advantage that perhaps explains the fact that at present well over three-fourths of the criminal convictions in this country rest on pleas of guilty[.]

*Brady v. United States*, 397 U.S. 742, 752, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970).

 Plea agreements are contracts between the defendant and the State. *Ridenour v. State*, 142 Md.App. 1, 5, 787 A.2d 815 (2001). Under Md. Rule 4–243(a)(1), "the defendant may enter into an agreement with the State's Attorney for a plea of guilty or nolo contendere on any proper condition. . . ." The court also plays a role. Once the State and the defendant reach an agreement, the parties present it to the court, which has the discretion to accept or reject the plea. *Rios*, 186 Md.App. at 362–63, 974 A.2d 366. If the court accepts the plea agreement, it must follow the terms. *Smith v. State*, 80

Md.App. 371, 375, 563 A.2d 1129 (1989). More specifically, Md. Rule 4-243(c)(2)–(3) states,

> (2) *Not Binding on the Court.* The agreement of the State's Attorney relating to a particular sentence, disposition, or other judicial action is not binding on the court unless the judge to whom the agreement is presented approves it.

> (3) *Approval of Plea Agreement.* If the plea agreement is approved, the judge shall embody in the judgment the agreed sentence, disposition, or other judicial action encompassed in the agreement or, with the consent of the parties, a disposition more favorable to the defendant than that provided for in the agreement.

Additionally, courts must interpret the agreement in a way that promotes fair play and equity to protect the integrity of plea agreements. *State v. Brockman,* 277 Md. 687, 697, 357 A.2d 376 (1976).

 If plea agreements are to be fairly and equitably executed, there necessarily have to be exceptions to the general rule that a court must enforce an accepted guilty plea. *Banks v. State,* 56 Md.App. 38, 47–48, 466 A.2d 69 (1983). To decide whether the circuit court must enforce the agreement, we must consider the guilty plea and the plea agreement as part of a "whole package of reciprocal arrangements and obligations." *Id.* (Citation and internal quotation marks omitted).

### B. Falero's Fraud

 As one exception to the general rule that a court must enforce the terms of a plea agreement after accepting the guilty plea, a court can vacate a guilty plea that the defendant obtained through fraud or misrepresentation. *Banks,* 56 Md. App. at 49, 466 A.2d 69. The Fifth Circuit has explained the reasoning for this exception. In *United States v. Ballis,* 28 F.3d 1399, 1402 (5th Cir.1994), Ballis pled guilty pursuant to a written plea agreement with the government. In the agreement, Ballis promised to be truthful about his involvement in

the crime. *Id.* However, the government later discovered that Ballis breached this portion of the agreement and asked for permission to rescind. *Id.* at 1409. The court found that Ballis gave untruthful testimony and withheld information. *Id.* The court further determined that Ballis had never intended to abide by the plea agreement. *Id.* Thus, the trial court ruled that the agreement had been void *ab initio* and allowed the government to rescind the plea agreement. *Id.* On appeal, Ballis argued that rescission was not an available remedy because the plea agreement did not discuss the remedies available for breach. *Id.* at 1410. The Fifth Circuit disagreed and explained that "[t]he lack of comprehensive provisions specifying remedies in the case of breach does not render the agreement ambiguous; contracts typically presume compliance, and the remedies for breach are commonly supplied simply by reference to the applicable law of contracts." *Id.*

In Falero's case, the circuit court determined that Falero obtained the court's acceptance of his plea agreement through fraud. As discussed in *Ballis*, it is immaterial that the agreement did not discuss consequences for fraudulently inducing the Court because voiding the agreement is the quintessential remedy for an agreement obtained through fraud. It is notable that the court is not forcing Falero to plead guilty or increasing his sentence. The court is simply not allowing Falero to benefit from his fraud by putting the parties back in their original positions.

### C. Falero's Breach

We next address whether Falero's breach of his plea agreement terms gave the court authority to vacate his guilty plea. Although a Maryland court has not directly addressed this situation, many federal and state appellate courts recognize a court's right to vacate a guilty plea when a defendant breaches a term of the plea agreement.

In *United States v. Reardon*, 787 F.2d 512, 516 (10th Cir.1986), for example, the defendant entered a guilty plea. The agreement provided that the defendant would provide a

full and truthful account of his involvement in the crime but did not lay out any consequences for the failure to do so. *See id.* at 515–16. The defendant did not provide a full and truthful account so the court permitted the government to revoke the plea agreement, and the Tenth Circuit affirmed, stating: "Where a plea is predicated in any significant degree on a promise or agreement, such promise or agreement must be fulfilled to maintain the integrity of the plea. Plea bargains, like contracts, cannot normally be unilaterally broken with impunity or without consequence." *Id.* at 516. (Citations omitted). *See also United States v. Cimino,* 381 F.3d 124, 125–28 (2d Cir.2004) (finding government had option to seek specific performance of plea agreement or treat agreement as unenforceable where plea agreement did not lay out consequences of breach but defendant breached explicit term that he not seek an adjustment to the sentencing range); *United States v. Whitlow,* 287 F.3d 638, 640 (7th Cir.2002) (deciding that the government could reinstate original charges after defendant breached promise not to appeal because it was the only effective remedy for the government); *United States v. Ramunno,* 133 F.3d 476, 484 (7th Cir.1998) ("Plea agreements are contracts, and we interpret them according to ordinary contract principles. Under these doctrines, a defendant's substantial breach of an unambiguous term of a plea agreement frees the Government to rescind the deal. [Defendant] cannot expect the Government to adhere to a deal that he himself violated. At the most basic level, [Defendant] lost his gamble that he could withhold complete cooperation and still receive a reduced sentence. Consequently, he loses the possible benefits of the broken plea agreement.") (citations omitted); *United States v. Simmons,* 537 F.2d 1260, 1261 (4th Cir.1976) (finding that even after defendant pleads guilty, "the government's obligation to make a [sentencing] recommendation arises only if defendant performs his obligation").

State courts have weighed in on this issue as well. The California Court of Appeal, in *People v. Vargas,* 91 Cal. App.4th 506, 110 Cal.Rptr.2d 210, 225–28 (2001), held that a defendant, who pled guilty and then violated the terms of the

plea agreement by providing the state with untruthful information, was not entitled to the benefits of his plea agreement. The court stated that "[t]he power of the court to set aside a plea bargain on the ground of breach by a defendant of its terms is beyond question." *Id.* at 226. *See also Adams v. State*, 957 So.2d 1157, 1157–58 (Ala.Crim.App.2006) (finding that defendant's untruthful testimony was a breach of his plea agreement and constituted a violation of probation where plea agreement provided for probation and defendant indicated that he would testify truthfully before pleading guilty because "[l]ogically, if he did not perform in accordance with the plea agreement, he would not be entitled to enjoy the benefits of that agreement"); *Brown v. State*, 261 Ga.App. 115, 582 S.E.2d 13, 14–15 (2003) (finding rescission of plea agreement was appropriate remedy where defendant's failure to testify truthfully at co-defendant's trial was a violation of the plea agreement, even though plea agreement did not specify the consequences of a breach); *State v. Williams*, 418 N.W.2d 163, 168 (Minn.1988) ("A plea agreement is in many ways analogous to a contract whose terms will not be enforced to benefit a breaching party."); *Moore v. State*, 938 So.2d 1254, 1258 (Miss.Ct.App.2006) ("When a defendant breaches a plea agreement, the agreement is terminated as if it never existed and the State of Mississippi retains all powers of prosecution. . . .") (Citation and internal quotations marks omitted); *State v. White*, 838 S.W.2d 140, 142 (Mo.Ct.App.1992) ("[B]oth the state and the defendant are bound by a plea agreement, and, upon breach, the parties are returned to pre-plea bargain status[.]"); *State v. Gilroy*, 195 Ohio App.3d 173, 959 N.E.2d 19, 22 (2011) ("It was defendant, not the trial court, who breached the plea agreement by failing to abide by the court's specific condition that she stay out of trouble between the plea hearing and her sentencing. Defendant's breach relieved the trial court of its duty to perform its promise to impose community-control sanctions."); *State v. Malone*, 138 Wash. App. 587, 157 P.3d 909, 911 (2007) ("In order to vacate a guilty plea on the basis of a defendant's breach of the plea agreement, the State must establish the breach in a hearing.");

*State v. Rivest,* 106 Wis.2d 406, 316 N.W.2d 395, 399 (1982) ("By analogy to contract law, we conclude that a plea agreement may be vacated where a material and substantial breach of the plea agreement has been proved. To allow a defendant to claim the benefit of an agreement where he, himself, is in default, offends fundamental concepts of honesty, fair play and justice."). *Compare Moore v. State,* 686 N.E.2d 861, 863 (Ind.Ct.App.1997) (finding that trial court no longer had jurisdiction to vacate defendant's guilty plea where court already sentenced the defendant because jurisdiction was transferred to the Department of Correction), *and Dyer v. State,* 34 P.3d 652, 653–54 (Okl.Crim.App.2001) (determining that trial court could not vacate guilty plea after sentencing because double jeopardy attached and the plea agreement did not contain any language regarding the State's remedy if the defendant breached the agreement), *with State v. Peyrefitte,* 885 So.2d 530, 532 (La.2004) (explaining that a defendant's breach of a plea bargain allows the court to set aside his agreement until the defendant has been sentenced on his guilty plea because that is when jeopardy attaches).

In our view, Maryland case law tracks these cases and leans toward permitting the court to vacate a previously accepted guilty plea when a defendant breaches the plea agreement, even if the consequences of the breach were not expressly included in the terms of the agreement. The defendant's rights when the State is the breaching party are clear. If the State breaches a plea agreement, regardless of whether the agreement outlines the consequences of a breach, the defendant can then choose to have the agreement enforced or vacated. *See Cuffley,* 416 Md. at 583, 7 A.3d 557; *Solorzano v. State,* 397 Md. 661, 667–68, 919 A.2d 652 (2007); *Tweedy,* 380 Md. at 488, 845 A.2d 1215; *Miller v. State,* 272 Md. 249, 255, 322 A.2d 527 (1974). Case law provides us with guidance on what should occur when the defendant is the breaching party.

In *Sweetwine v. State,* 42 Md.App. 1, 2, 398 A.2d 1262 (1979), Sweetwine pled guilty and later repudiated his plea. The State then brought Sweetwine to trial on all counts

originally charged, not merely the charge he agreed to plead guilty to. *Id.* Sweetwine was convicted and he appealed, arguing that it was double jeopardy to try him for the crimes that were not part of the original plea agreement. *Id.* at 2–3, 398 A.2d 1262. This Court disagreed, stating that once the guilty plea was voided the defendant and the State were returned to "square one." *Id.* at 4, 398 A.2d 1262. We reasoned that allowing a defendant to have his guilty plea set aside but then holding the State to the plea agreement terms would endanger the effectiveness of plea bargaining because prosecutors would be hesitant to enter plea agreements. *Id.* at 12–13, 398 A.2d 1262, *citing United States ex rel. Williams v. McMann,* 436 F.2d 103, 107 (2d Cir.1970) (cautioning against permitting a situation where the defendant can force the State into a "heads I win tails you lose" gamble because it would decrease the amount of plea agreements).

The Court of Appeals applied similar equitable principles in *Sifrit,* 383 Md. at 85–86, 857 A.2d 65, where the State and the defendant, Sifrit, entered into a Memorandum of Understanding. The memorandum, in part, stated: "Defendant agrees to subject herself to a polygraph examination to be conducted by an active federal polygraph examiner.... If Defendant tests 'not deceptive' on all material questions related to the homicides of the victims ... and absent any compelling independent evidence to the contrary (i.e. eyewitness testimony, photographs and/or prospective reliable inculpatory statements by the Defendant) the State agrees not to prosecute Defendant for these homicide charges." *Id.* at 86, 857 A.2d 65. After signing the agreement, Sifrit admitted to participation in the murders. *Id.* When she moved to enforce the memorandum the court found that the State did not have to abide by the agreement because Sifrit breached the agreement by admitting to her participation; the State had entered the agreement under her representation that she had nothing to do with the murders. *Id.* at 89–90, 857 A.2d 65. The Court of Appeals affirmed, interpreting the terms of the memorandum in a way that promotes fair play and equity under the facts and circumstances of the case, the same way it would plea negotiations.

*Id.* at 93–94, 857 A.2d 65. The Court held that although fair play and equity typically requires the State to be held to its bargain, that is not so when the defendant does not perform his or her obligations under the bargain. *Id.* at 94, 857 A.2d 65; *see also State v. Pitt,* 390 Md. 697, 714–15, 891 A.2d 312 (2006).

In addition, several Maryland cases suggest that vacating a guilty plea is an appropriate remedy for a defendant's breach of the plea agreement. In *Osborne v. State,* 304 Md. 323, 325, 499 A.2d 170 (1985), *abrogated on other grounds by State v. Hawkins,* 326 Md. 270, 604 A.2d 489 (1992), the State and Osborne entered into a plea agreement and Osborne pled guilty to accessory and accessory after the fact to first degree murder. The court accepted the plea and sentenced Osborne to life imprisonment, suspending all but twenty years for the accessory after the fact count and thirty years, suspending all but ten years for the accessory to murder count. *Id.* On appeal, the State asked that it be permitted to rescind the plea agreement because the sentence was so lenient that a material part of the plea agreement had not been met. *Id.* at 337, 499 A.2d 170. The Court of Appeals rejected this reasoning, not because the plea agreement had already been accepted, but because the agreement had not been breached. *Id.* at 338–39, 499 A.2d 170.

In *Rojas v. State,* 52 Md.App. 440, 441, 450 A.2d 490 (1982), the State agreed to drop several charges against Rojas and to recommend a ten-year suspended sentence with five years of probation on the condition that Rojas plead guilty to second degree rape and that, as a prerequisite to probation, Rojas "leave the country within 90 days." The court accepted the plea and Rojas breached the agreement when he did not leave the country. *Id.* at 443, 450 A.2d 490. On appeal, this Court determined that the term requiring Rojas to leave the county was unenforceable. *Id.* at 442–43, 450 A.2d 490. Importantly though, we determined that the remedy for an unenforceable plea agreement term was to vacate the plea agreement because "it would be unfair to allow [a defendant] to avoid his

responsibilities under the plea agreement, yet demand the benefit of the bargain." *Id.* at 445, 450 A.2d 490.

 In light of these authorities, we conclude that a defendant, whose guilty plea has been accepted by the court, should not be entitled to the benefit of his bargain if he or she breaches a plea agreement. This is true even when the plea agreement does not expressly specify consequences of a breach. Just as allowing a defendant to rescind a plea agreement while holding the State to its terms—the situation in *Sweetwine*—would be a disincentive for prosecutors to enter into plea agreements, so too would allowing the defendant to breach plea agreement terms without repercussion. Additionally, courts would have the same disincentive to accept guilty pleas. In fact, at the hearing on the competing motions to enforce and vacate Falero's plea agreement, the circuit court indicated that it would be hesitant to accept future guilty pleas if there could never be an instance where it could later vacate the plea because of the defendant's conduct.

In this case, the court ordered a PSI and no change in bond conditions but Falero did not submit to the PSI or show up for sentencing. We cannot justly force the court to give Falero the benefit of his bargain when he purposefully did not live up to his end. It would be unreasonable to find that a defendant who understands the terms of the agreement, can have the court accept his plea, then choose to break those terms and still receive the benefit of his or her bargain. Certainly, the court cannot increase the appellant's sentence simply because of a breach. Vacating the agreement does not allow the appellant to benefit from the agreement he breached, but also does not hold him to his guilty plea—he can decide to go to trial or make another agreement with the State. Thus, although generally the court must enforce a plea agreement after accepting a guilty plea under Md. Rule 4–243, a defendant's breach creates an exception to this rule that allows the court to vacate the plea.

Falero relies on *Tweedy*, 380 Md. at 480, 845 A.2d 1215, where the State and the defendant entered into a plea agree-

ment that the court accepted. Under the plea agreement, Tweedy was to plead guilty and receive five years with all but six months suspended and two years probation. *Id.* No other terms were on the record. *Id.* at 479–82, 845 A.2d 1215. Thus, defendant's presence at sentencing was not a condition of his plea agreement with the State. *Id.* at 482, 845 A.2d 1215. However, the judge tried to add another term to the plea agreement after accepting the plea when he announced: "If you don't show up at all ... and we have to send out a warrant, the sentence will be five years." *Id.* at 480–81, 845 A.2d 1215. The defendant did not appear for sentencing and the court sentenced him to five years. *Id.* The appellate court found that the court violated Rule 4–243 because the court did not follow the plea agreement that it accepted. *Id.* at 486, 845 A.2d 1215. Falero asserts that we should conclude the same because the circuit court, before accepting Falero's plea, did not explain in detail the consequences for not appearing at sentencing. However, *Tweedy* is distinguishable because there the defendant did not breach the terms of his plea agreement like Falero did, and the court in *Tweedy* attempted to hold the appellant to his guilty plea and increase his agreed upon sentence, unlike the court in this case.

To be sure, the Court in *Tweedy* did make the following statement: "[W]hen a defendant does not appear at sentencing after entering a negotiated plea, and no specific sanction or consequence is mentioned for nonappearance, if the court refuses to honor the plea agreement, Rule 4–243 has been violated and the defendant is entitled to a remedy." *Id.* at 487, 845 A.2d 1215. However, this statement is not as unequivocal as Falero suggests it is because taken to the extreme, this statement could mean that even if appearance at sentencing is a specific term of the plea agreement, the defendant is permitted to break the agreement and still obtain the benefit of his bargain. That result would be unreasonable. Indeed, the Court in *Tweedy* understood that the defendant must abide by the terms of the agreement to receive the agreed upon sentence. The Court said: "[O]nce the plea was accepted, the court was required to impose the agreed upon

sentence, *assuming that all the conditions imposed on the defendant were fulfilled."* *Id.* at 485, 845 A.2d 1215. (Emphasis added). Indeed, the Court also expounded that plea bargains, like contracts, "cannot normally be unilaterally broken with impunity or without consequence." *Id.* at 482, 845 A.2d 1215. Thus, in our view, the Court in *Tweedy* was looking at the issue under the facts of the case before it, where appearance was not a condition of the plea agreement, as it was here. Additionally, the Court was addressing whether a judge could increase the sentence, when an increase in sentence for non-appearance was not explained to the defendant before the judge accepted the plea. Here, the court is merely vacating the sentence so neither party obtains any benefit from the original bargain.

Finally, Falero cited several cases where the Court of Appeals held that a court could not change the sentencing terms after accepting a defendant's plea. *See Matthews v. State,* 424 Md. 503, 524–26, 36 A.3d 499 (2012) (holding that a court could not agree to impose a sentence "within the guidelines" but then give a sentence that suspended all but an amount within the guidelines because a reasonable defendant would believe that "within the guidelines" included suspended time); *Baines,* 416 Md. at 607–08, 7 A.3d 578 (holding same); *Cuffley,* 416 Md. at 573, 585–86, 7 A.3d 557 (holding same). Falero contends that these cases required the court in his case to give him the agreed upon sentence. However, in those cases, the Court held the defendant to his guilty plea while changing the sentencing terms of the agreement after accepting the plea. Thus, those cases might indicate that increasing a sentence would not be an appropriate remedy when the defendant breaches the terms of the agreement. But the court in this case did not increase Falero's sentence or hold Falero to his guilty plea. Here, the issue is whether the court can vacate, not change, an agreement when a defendant breaches the terms of the agreement or acts fraudulently. For all these reasons, we conclude that under the circumstances of this case, the circuit court had the authority to

vacate the agreement and the guilty plea and return Falero to square one.

ORDERS OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY DENYING APPELLANT'S MOTION TO ENFORCE PLEA AGREEMENT AND GRANTING STATE'S REQUEST TO VACATE PLEA AFFIRMED. GUILTY PLEA VACATED. CASE REMANDED FOR PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLANT.